319 S.E.2d 806

**George GIBSON**

v.

**Jerry DALE, Supt., etc.**

**No. 15750.**

Supreme Court of Appeals of West Virginia.

July 11, 1984.

Michael T. Chaney, Kay, Casto & Chaney, Charleston, for appellant:

Catherine A. McMullen, Asst. Atty. Gen., Charleston, for appellee:

McGRAW, Justice:

This is an appeal brought by the appellant, George Gibson, from a final order of the Circuit Court of Kanawha County, entered February 24, 1982. The lower court denied the appellant's prayer for relief in habeas corpus on the ground that the claims raised in the appellant's petition had been waived by his failure to assert them in a previous habeas corpus proceeding. The appellant contends that the lower court's resolution of the waiver issue was clearly wrong. We agree, and we reverse the judgment of the circuit court on that ground.

In 1975, the appellant was convicted by a jury in the Circuit Court of Kanawha County of the crime of robbery by violence and was sentenced to imprisonment in the penitentiary for a term of forty years.

In May 1976, the appellant, by his trial counsel, Arthur T. Ciccarello, filed a timely petition for a writ of error urging reversal of the conviction on the grounds that suggestive pre-trial identification procedures violated the appellant's rights under the Sixth and Fourteenth Amendments to the United States Constitution and that he was prejudiced by certain testimony at trial. By order entered December 13, 1976, a majority of the Court refused the petition.

On July 20, 1977, the appellant filed with the Court a *pro se* petition for a writ of habeas corpus alleging ineffective assistance by Mr. Ciccarello at trial. The writ was granted on October 3, 1977, and made returnable before the Circuit Court Kanawha County. An attorney, Orville Hardman, was retained to represent the appellant in the proceedings in the circuit court. An evidentiary hearing was conducted on December 19, 1977, and, by order entered

February 14, 1978, the appellant's prayer for relief was denied.

The appellant took no appeal from the judgment of the circuit court. On December 13, 1978, however, the appellant filed with this Court a second *pro se* petition for a writ of habeas corpus in which he attacked his conviction on the same grounds that had formed the basis of his prior application for a writ of error. By order entered January 18, 1979, the writ was granted and made returnable before the Circuit Court of Kanawha County. Counsel was subsequently appointed to represent the appellant.

A hearing was conducted on January 13, 1982, at which the State sought dismissal of the proceedings on the ground that the appellant had waived consideration of the matters contained in his second *pro se* petition by his failure to raise them during the previous habeas hearing. The appellant opposed the motion, asserting that at the time of the prior proceeding he had not been aware of the necessity of asserting all potential grounds for relief in a single proceeding or of the consequences of failing to do so.[1] The circuit court concluded, however, that the appellant had in fact knowingly and intelligently waived consideration of the contentions advanced in his *pro se* petition by his failure to raise them in the prior hearing. The circuit court refused to take evidence upon or to consider the merits of the appellant's *pro se* claims, and, by order entered February 24, 1982, denied the relief sought on the ground that "the contentions and grounds advanced by the petitioner have been previously and finally adjudicated or waived." It is from this order that the appellant prosecutes this appeal.

## I.

The principal issue on appeal is whether the circuit court erred in concluding that the appellant had waived consideration of the issues raised in his petition below by his failure to assert them in the course of the 1977 habeas proceeding. Our post-conviction habeas corpus statute, W.Va. Code § 53–4A–1 *et seq.* (1981 Replacement Vol.), clearly contemplates that a person who has been convicted of a crime is ordinarily entitled, as a matter of right, to only one post-conviction habeas corpus proceeding during which he must raise all grounds for relief which are known to him or which he could, with reasonable diligence, discover. *See Losh v. McKenzie,* 166 W.Va. 762, 277 S.E.2d 606 (1981); *Shamblin v. Hey,* 163 W.Va. 396, 256 S.E.2d 435 (1979); *Call v. McKenzie,* 159 W.Va. 191, 220 S.E.2d 665 (1975). A petitioner for habeas corpus relief is not entitled to consideration of claims which have been "previously and finally adjudicated or waived" in a prior habeas corpus proceeding under the act. W.Va. Code §§ 53–4A–1(a); 53–4A–3(a); 53–4A–7(a). Waiver is deemed to occur "when the petitioner could have advanced, but intelligently and knowingly failed to advance," a contention or ground for relief in a prior proceeding, and the failure to assert available claims at such time gives rise to a rebuttable presumption of a knowing and intelligent waiver of such claims. W.Va. Code § 53–4A–1(c).[2]

---

**1.** The appellant's allegation that Mr. Hardman failed to advise him of this requirement formed the basis of an ineffective assistance claim which was asserted in an amended petition prepared by the appellant's court-appointed counsel and filed with the circuit court on December 1, 1980. On appeal, the appellant does not press the ineffectiveness issue except insofar as Mr. Hardman's alleged failure to advise him relates to the waiver issue.

**2.** W.Va. Code § 53–4A–1(c) provides in full:

For the purposes of this article, a contention or contentions and the grounds in fact or law relied upon in support thereof shall be deemed to have been waived when the petitioner could have advanced, but intelligently and knowingly failed to advance, such contention or contentions and grounds before trial, at trial, or on direct appeal (whether or not said petitioner actually took an appeal), or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings instituted by the petitioner to secure relief from his conviction, or sentence, unless such contention or contentions and grounds are such that, under the Constitution of the United States or the Constitution of this State, they cannot be waived under the circumstances giving rise to the alleged waiver. When any such contention or contentions and

■ In *Losh v. McKenzie, supra,* we discussed in detail the waiver provisions of W.Va. Code § 53–4A–1 *et seq.* We concluded that, by its very language, W.Va. Code § 53–4A–1(c) contemplates a knowing and intelligent waiver, in the vein of a waiver of a constitutional right, which cannot be presumed from a silent record. Before the failure to advance contentions in a habeas corpus proceeding will bar their consideration in subsequent applications for habeas corpus relief, the record must conclusively demonstrate that the petitioner voluntarily refrained from asserting known grounds for relief in the prior proceeding.

■ As a consequence, we concluded that the statutory waiver provisions may be applied only when the record demonstrates that an omnibus hearing was conducted in the prior habeas corpus proceeding. At Syllabus Point 1, we held:

An omnibus habeas corpus hearing as contemplated in *W.Va. Code,* 53–4A–1 *et seq.* [1967] occurs when: (1) an applicant for habeas corpus is represented by counsel or appears *pro se* having knowingly and intelligently waived his right to counsel; (2) the trial court inquires into all the standard grounds for habeas corpus relief; (3) a knowing and intelligent waiver of those grounds not asserted is made by the applicant upon advice of counsel unless he knowingly and intelligently waived his right to counsel; and, (4) the trial court drafts a comprehensive order including the findings on the merits of the issues addressed and a notation that the defendant was advised concerning his obligation to raise all grounds for post-conviction relief in one proceeding.

In order to show a knowing and intelligent waiver of grounds not asserted, the record of the prior omnibus hearing must show that counsel interrogated and discussed with the petitioner every potential ground for relief in habeas corpus and explained the conclusive effect of the final decision on subsequent applications for habeas corpus relief. The court before which the omnibus hearing is conducted has a duty to "inquire on the record whether counsel discussed all grounds which might apply to petitioner's case and whether petitioner was advised by his counsel about the grounds and intentionally waives them" and to "enter a comprehensive order which addresses not only the grounds actually litigated, but the grounds waived as well." 166 W.Va. at 770, 277 S.E.2d at 612.

■ The evidence presented in the record of this case falls far short of the standards enunciated in *Losh v. McKenzie.* At the hearing below the appellant admitted that he had been aware of the existence of the contentions asserted in his petition during the 1977 habeas corpus proceeding. He further admitted that he had discussed the possibility of raising those claims at that time with Mr. Hardman, who advised against it on strategic grounds.[3] The appellant also testified, however, that at no time did Mr. Hardman advise him of the waiver consequences of such a strategy. There is nothing in the record of the 1977 habeas proceeding presented before this Court to contradict the appellant's testimony, and Mr. Hardman, who was present at the hearing below, did not testify, even though the appellant had waived the attorney-client privilege.

Moreover, there is nothing in the record of the 1977 habeas hearing to indicate that the circuit court made any inquiry of the appellant or counsel to discover whether they had discussed other potential grounds for relief or whether the appellant had been informed of and understood the conse-

grounds could have been advanced by the petitioner before trial, at trial, or on direct appeal (whether or not said petitioner actually took an appeal), or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings instituted by the petitioner to secure relief from his conviction or sentence, but were not in fact so advanced, there shall be a rebuttable pre-

sumption that the petitioner intelligently and knowingly failed to advance such contention or contentions and grounds.

3. The appellant testified that Mr. Hardman told him that it would be inappropriate to raise grounds for relief first asserted by trial counsel in the petition for a writ of error in a proceeding in which the ineffectiveness of trial counsel was alleged.

quences of his failure to raise such grounds at that time. Indeed, the circuit court's order denying relief in the previous habeas proceeding did not even contain a notation that the appellant had been advised of his obligation to raise all potential grounds for post-conviction relief in one proceeding.

The attorney for the State did read into the record of the hearing below certain remarks with regard to the principle of waiver which were allegedly made by the circuit court in the previous habeas proceeding at a preliminary hearing conducted on November 28, 1977.[4] On cross-examination, the appellant admitted that he had been present at that time and had heard the court's admonition with respect to waiver, but asserted that he had not understood it. Although the lower court apparently chose to disbelieve the appellant's assertion, we note that the admonition speaks to the waiver issue only in the most general terms and offers no explanation of the concept. Moreover, it is evident that the excerpt read by the State contained remarks which were addressed only to counsel for the appellant. There was no showing that the circuit court made even à superficial inquiry at any time during the prior proceeding to determine whether the appellant understood or had been advised of the waiver implications of his failure to raise all issues at the 1977 evidentiary hearing.

In light of this evidence, we must conclude that the circuit court erred in refusing to consider the merits of the appellant's claims on the ground that he had waived them by failing to assert them in the previous habeas proceeding. The record of the 1977 hearing does not clearly demonstrate a knowing and intelligent waiver of those grounds for relief, and the only evidence adduced at the hearing below mitigates in the appellant's favor. More-

over, the record before this Court does not demonstrate that the appellant was afforded an omnibus habeas corpus hearing, as contemplated by W.Va. Code § 53–4A–1 *et seq.*, in the course of the previous habeas proceeding.

We are not unmindful of the fact that comprehensive standards for the conduct of an omnibus post-conviction habeas corpus hearing did not yet exist at the time of the appellant's first habeas proceeding. However, the principles and guidelines set forth in *Losh v. McKenzie, supra* had been announced over nine months before the subsequent hearing was held, and the lower court was required to resolve the waiver question in accordance with those principles and guidelines. Accordingly, we reverse the judgment of the circuit court insofar as it held that the appellant had waived the contentions raised in his petition for a writ of habeas corpus by his failure to assert them in the previous habeas proceeding, and we remand the case for consideration of the merits of the appellant's contentions.

## II.

The appellant also raises several issues which are not related to the waiver issue discussed above. He prays that on remand the circuit court be ordered to conduct a full evidentiary hearing on those contentions, raising the question of when such a hearing must be conducted under our post-conviction habeas corpus statute. In addition, he asserts that the circuit court erred in denying his motion to produce, inspect and copy all police reports pertaining to the crime of which he was convicted, raising the issue of the extent to which a petitioner for post-conviction habeas corpus relief can compel production of records in the possession of the State.

---

**4.** The full transcript of the preliminary proceeding was not made part of the record before this Court. The excerpt, read out-of-context by counsel for the State, is reprinted below:

The only thing I am going to do today, Mr. Hardman, is to set a hearing date. It is my practice to permit you to file an amended writ and raise any valid allegations. You are only going to get one evidentiary hearing. Any

matters not raised by you will be deemed waived. I will set it down for December 19 for evidentiary hearing and I will give you until December 8 to file an amended petition. Serve a copy on the prosecuting attorney. As I indicated, you may raise any valid allegations you see fit. I want the record to be clear that any issues not raised at the evidentiary hearing will be deemed waived.

It is evident from a reading of W.Va. Code § 53–4A–7(a)[5] that a petitioner for habeas corpus relief is not entitled, as a matter of right, to a full evidentiary hearing in every proceeding instituted under the provisions of the post-conviction habeas corpus act. Indeed, where the allegation in the petition are completely without substance or merit, the statute requires no hearing at all and empowers the court to deny relief summarily. *Thomas v. Leverette*, 161 W.Va. 224, 239 S.E.2d 500 (1977); *Purdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973). A hearing is required only "[i]f it appears to the court ... that there is probable cause to believe that the petitioner may be entitled to some relief and that the contention or contentions and grounds (in fact or law) advanced have not been previously and finally adjudicated or waived." Even in such circumstances, there is no requirement that a full evidentiary hearing be conducted. This statute requires only that "the court shall promptly hold a hearing and/or take evidence on the contention or contentions and grounds (in fact or law) advanced."

Nor does it appear that the statute entitles a petitioner for post-conviction habeas corpus relief to unlimited compulsory discovery. Although the statute allows the court considerable flexibility in receiving evidence offered by the petitioner,[6] W.Va. Code § 53–4A–4(a) (1983 Cum. Supp.) requires the court to order production of records and documents in the possession of the State only if it appears to the court that "such records, or any part or parts thereof, are necessary for a proper determination of the contention or contentions and grounds (in fact or law) advanced in the petition."[7]

In essence, then, the post-conviction habeas corpus statute leaves the decision of whether to conduct an evidentiary hearing or to compel the State to produce evidence in its possession in large part to the sound discretion of the court before which the writ is made returnable. *See Ravnell v. Coiner*, 320 F.Supp. 1117 (N.D.W.Va.1970); *Purdue v. Coiner*, *supra*. This discretion is not unlimited, how-

---

**5.** The statute provides:

If the petition, affidavits, exhibits, records and other documentary evidence attached thereto, or the return or other pleadings, or the record in the proceedings which resulted in the conviction and sentence, or the record or records in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or the record or records in any other proceeding or proceedings instituted by the petitioner to secure relief from his conviction or sentence, show to the satisfaction of the court that the petitioner is entitled to no relief, or that the contention or contentions and grounds (in fact or law) advanced have been previously and finally adjudicated or waived, the court shall enter an order denying the relief sought. If it appears to the court from said petition, affidavits, exhibits, records and other documentary evidence attached thereto, or the return or other pleadings, or any such record or records referred to above, that there is probable cause to believe that the petitioner may be entitled to some relief and that the contention or contentions and grounds (in fact or law) advanced have not been previously and finally adjudicated or waived, the court shall promptly hold a hearing and/or take evidence on the contention or contentions and grounds (in fact or law) advanced, and the court shall pass upon all issues of fact without a jury. The court may also provide for one or more hearings to be held and/or evidence to be taken in any other county or counties in the State.

**6.** The petitioner is permitted to attach the petition "[a]ffidavits, exhibits, records or other documentary evidence supporting the allegations" contained therein and to set forth all facts within his personal knowledge. W.Va. Code § 53–4A–2. In addition, the statute provides that at the hearing stage, depositions of witnesses may be read into evidence and that "[t]he court may receive proof by proper oral testimony *or other proper evidence*." (Emphasis added). W.Va. Code § 53–4A–7(b).

**7.** We note that the rules of procedure in criminal and civil cases do not apply in post-conviction habeas corpus proceedings. W.Va. Code § 53–4A–1(a) expressly provides that proceedings under that article are civil in nature. *Purdue v. Coiner, supra; State ex rel. Harrison v. Coiner*, 154 W.Va. 467, 176 S.E.2d 677 (1970). As a consequence, the criminal rules of discovery do not apply. *See* W.Va.R.Crim.P. 16. In addition, the discovery provisions of the West Virginia Rules of Civil Procedure are expressly excluded from application in proceedings in habeas corpus by Rule 81(a)(5). *See State ex rel. Walker v. Jenkins*, 157 W.Va. 683, 203 S.E.2d 353 (1974); *Pozzie v. Prather*, 151 W.Va. 880, 157 S.E.2d 625 (1967).

ever, and the court must be guided by the necessities of each particular case. "The writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action." *Harris v. Nelson,* 394 U.S. 286, 290, 89 S.Ct. 1082, 1086, 22 L.Ed.2d 281, *reh. denied,* 394 U.S. 1025, 89 S.Ct. 1623, 23 L.Ed.2d 50 (1969). W.Va. Code § 53–4A–1 *et seq.* clearly contemplates that a petitioner for post-conviction habeas corpus review is entitled to careful consideration of his claims for relief "in order to assure that no violation of [petitioner's] due process rights could have escaped the attention of either the trial court or the Supreme Court of Appeals." *Shamblin v. Hey,* 163 W.Va. at 399, 256 S.E.2d at 437. Accordingly, "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Harris v. Nelson,* 394 U.S. at 300, 89 S.Ct. at 1091.

▇ With respect to the issue of whether, in a particular case, the petitioner is entitled to a full evidentiary hearing, the ultimate question to be decided by the court is whether the petitioner has had a full and fair hearing at some stage of the proceeding with respect to the contentions raised in his petition. If the facts were sufficiently developed at or before trial so that the court can rule on the issue presented without further factual development, the court may, in its discretion, decline to conduct an evidentiary hearing during the habeas proceeding and may rule on the merits of the issues by reference to the facts demonstrated on the record. If, on the other hand, the facts giving rise to the petitioner's contentions have never been fully developed prior to the habeas proceeding or proof of the petitioner's allegations depends on after-discovered information, the court should afford the petitioner a full opportunity for the presentation of the relevant facts.[8]

▇ The right to access to relevant evidence in the possession of the State is a component of the right to full consideration of one's claims. Certainly, the habeas petitioner, by virtue of his status as a prisoner, is almost always at a disadvantage in developing the evidence necessary to support his allegations. The court to which a motion for production of documents or records is addressed in a habeas proceeding should exercise flexibility in ruling on the motion. Where the petitioner can demonstrate that materials in the possession of the State contain relevant evidence which would enable him to prove specific allegations entitling him to relief, the court should grant the motion.

▇ In the case at bar, it is apparent that the circuit court never reached the issue of whether the appellant was entitled to an evidentiary hearing since it concluded that the statutory waiver provisions precluded any consideration of the merits of the appellant's claims. Accordingly we decline to order the circuit court to conduct a full evidentiary hearing on remand, leaving the determination of whether such a hearing is necessary to the sound discretion of the circuit court.

**8.** We note that in *Townsend v. Sain,* 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963), the United States Supreme Court concluded that federal courts must conduct evidentiary hearings upon application for a writ of habeas corpus by a state prisoner in the following circumstances:

If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

Although the relevant provisions of the federal habeas corpus statutes differ substantially from the provisions of W.Va. Code § 53–4A–1 *et seq.,* we think the list of circumstances announced in *Townsend* provides excellent guidance for the courts of this State in determining whether an evidentiary hearing should be conducted in a particular habeas corpus proceeding.

We also decline to reverse the circuit court's decision not to order the production of the police reports requested by the appellant. The appellant's motion, which was tendered on September 12, 1980, also sought production of photographs used in the pre-trial identification procedures which the appellant challenged in his habeas corpus petition. A hearing on the motion was conducted on October 24, 1980. By order entered November 21, 1980, the circuit court granted the motion insofar as it applied to the photographs, but denied the request for copies of the police reports.

In view of the appellant's allegations regarding the suggestiveness of the pre-trial identification procedures, it is obvious that the appellant was entitled to access to the photographs of such procedures for use at the habeas proceeding. The appellant did not specify, however, in what manner the police reports were necessary to a proper resolution of the issues raised in his petition. He does state on appeal that generally such reports "are relevant to the identification procedures employed by the police in investigating a crime and apprehending a suspect." He does not state, however, what relevance those documents have to his specific allegations, nor is there any indication that he did so in the proceedings below. In these circumstances, we cannot conclude that the circuit court abused its discretion in denying that portion of the appellant's motion.

For the reasons stated herein, we conclude that the lower court erred in finding that the appellant had waived consideration of the matters raised in his *pro se* petition *for a writ of habeas corpus by his failure to* assert such claims at the prior habeas corpus proceeding. We reverse the judgment of the Circuit Court of Kanawha County on that ground and remand the case to that court for such further proceedings as may be necessary in accordance with the provisions of W.Va. Code § 53–4A–1 *et seq.* and the principles enunciated in this opinion.

Reversed, in part, and remanded.

319 S.E.2d 815

**STATE ex rel. J.D.W., a Juvenile**

v.

**J.D. HARRIS, Superintendent of the West Virginia Industrial Home for Youths.**

**STATE of West Virginia ex rel. K.R.**

v.

**Ronald GREGORY, Superintendent of the Industrial Home for Youth.**

Nos. 16237, 16345.

Supreme Court of Appeals of West Virginia.

July 12, 1984.

William W. Pepper and Andrew Nason, Charleston, for petitioner in No. 16345.

1. The West Virginia Department of Corrections recently closed its facility for the incarceration of youthful male offenders. That facility was called the West Virginia Industrial School for Boys, more commonly known as "Pruntytown." *See State ex rel. K.W. v. Werner,* 161 W.Va. 192, 242 S.E.2d 907, 908 (1978). The care, training and reformation of male and female juvenile offenders has been consolidated into one facility. *W.Va.Code,* 28–3–1 [1981], provides:

John Ernest Shank, Asst. Atty. Gen., Charleston, for respondents in No. 16345.

George Castelle, Juvenile Advocates, Inc., Charleston, for relator in No. 16237.

Janet Frye Steele, Asst. Atty. Gen., Charleston, for respondent in No. 16237.

**McHUGH, Chief Justice.**

These actions, No. 16237 and No. 16345, present similar issues to this Court and they have been consolidated for the purpose of resolution. These actions are before this Court upon petitions for writs of habeas corpus by two residents of the West Virginia industrial home for youth (hereinafter "juvenile correctional facility"), located in Harrison County, West Virginia.[1] The relators, J.D.W. and K.R., allege that as victims of mistreatment at that facility they have been subjected to cruel and unusual punishment prohibited by the Eighth

The West Virginia industrial home for girls, heretofore established and located at Industrial, in Harrison county, shall be continued and hereafter known as the "West Virginia industrial home for youth." The industrial home shall be charged with the care, training and reformation of girls and boys committed to its custody. It shall be managed, directed and controlled as prescribed in article one, chapter twenty-five of this Code.

Amendment to the Constitution of the United States and Article III, Section 5 of the Constitution of West Virginia.[2] The respondents in these actions are the superintendents of the juvenile correctional facility when these actions were commenced. This Court has before it the petitions for relief, all matters of record and the briefs and oral argument of counsel.

I

J.D.W.

At the time the petition for relief was filed with this Court on March 9, 1984, the relator J.D.W. was a 17 year-old male in the custody of the juvenile correctional facility. In 1982, J.D.W. had been convicted as an adult in the Circuit Court of Kanawha County for aggravated robbery and was serving a sentence of ten years.

The facts that give rise to the present action are disputed by the parties. The relator alleges that shortly before midnight on February 11, 1984, he was asleep in a "security room" when a correctional officer at the facility entered the room and kicked him in the chest. The relator further alleges that after he rose to his feet the same correctional officer then struck him in the left eye opening a wound that later required 11 stitches and then kicked his feet out from under him knocking him to the floor.

The respondent admits that the correctional officer struck the relator and kicked his feet out from under him during the altercation. The respondent maintains, however, that the officer's conduct was not malicious and was done instinctively by the officer in self-defense after J.D.W. first struck the officer on the left side of the face. The respondent claims that J.D.W. had been placed in the "security room"

between 6:30 p.m. and 7:00 p.m. on the day in question for breaking two window panes with his hand. At midnight on that same day, he was being moved by force to a "maximum security room" when the altercation between J.D.W. and the correctional officer occurred.

The relator asserts that an investigation of the incident by his counsel uncovered evidence of a number of similar assaults upon other residents of the juvenile correctional facility. This information was reported to the West Virginia Department of Corrections which then conducted its own investigation. The Department of Corrections dismissed the correctional officer involved in the altercation with J.D.W. for use of excessive force. The Department of Corrections took further disciplinary action against two other correctional officers who were subsequently reinstated to their positions with back pay.

As a result of reporting the above-described incident and the investigations that followed, the relator contends that he was the subject of harassment by the other correctional officers at the facility. Such harassment was in the form of repeated searches of his person and possessions. The relator further alleges that the trauma of the incident has produced both physical and psychological problems, including fear of sleeping, nightmares and headaches.

The relator argues that the violent incident with the correctional officer and the fearful environment within which he was forced to live constitutes cruel and unusual punishment in violation of the provisions of the Eighth Amendment to the Constitution of the United States and Article III, Section 5 of the Constitution of West Virginia. He prays for release from the juvenile correctional facility into the custody of his parents.[3]

---

**2.** *U.S. Const.* amend. VIII, provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."

*W. Va. Const.* art. III, § 5, provides, in pertinent part: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."

**3.** Pending the outcome of this action, the relator further prayed for interim relief in the form of a transfer to another appropriate facility which this Court granted in an order entered March 13, 1984.

Furthermore, on April 13, 1984, the relator filed, with leave of this Court, a supplemental petition for writs of habeas corpus and mandamus in which he alleges institutional and pro-

### K.R.

The action involving K.R. originated in this Court as a *pro se* letter in which the relator alleged certain misconduct by the staff of the juvenile correctional facility. Counsel was subsequently appointed to represent the relator and an amended petition for a writ of habeas corpus was filed with this Court on June 7, 1984. The relator's letter and the amended petition for relief both allege that for a period extending from May 7, 1984 to May 21, 1984, the relator was unlawfully "locked down" in his room at the facility.

The facts surrounding the "lock down," although not disputed by the parties, are not fully developed. The relator in his *pro se* letter indicates that he was "locked down" for being "out of control," but he further asserts that he was only "out of control" for a few minutes and that the extended "lock down" was excessive punishment. His amended petition alleges that the room in which the relator was locked was small with no light or furniture except for a bare mattress. It is further alleged that as a result of the "lock down" the relator was unconstitutionally denied free access to educational classes, toilet facilities and association with other residents of the facility.[4] Finally, the amended petition for relief asserts that educational, recreational and counselling programs at the juvenile correctional facility are unconstitutionally deficient to meet the rehabilitative needs of the relator.

The respondent admits that the relator was locked in his room contrary to statutory standards; however, the respondent denies that the relator's "lock down" constituted cruel and unusual punishment. In oral argument before this Court, the respondent admitted that there are no records to indicate who ordered the "lock down" of the relator. The respondent further denies the allegations of unconstitutionally deficient educational, recreational and counselling programs at the facility.

The relator K.R. prays that he be released from the juvenile correctional facility into the custody of his family. In the alternative, the relator prays that he be transferred to another appropriate facility because of his fear of retaliation from the staff of the juvenile correctional facility and the negative effects of this incident upon his progress.

### II

The threshold question presented to this Court involves the issue of mootness. The respondents in both actions have moved this Court to dismiss their respective cases as being moot. In the case of J.D.W., the respondent observes that on April 19, 1984, he reached his 18th birthday and, pursuant to *W.Va.Code*, 49–5–16(b) [1982], was returned to the Circuit Court of Kanawha County for reconsideration and modification of sentence.[5] After a hearing, that Court modified J.D.W.'s sentence and

---

gram deficiencies at the juvenile correctional facility have caused the violent disruptions at that facility. Specifically, the relator alleges deficiencies in the following areas: staffing, recreation, education, and vocational rehabilitation. The respondent objects to these claims in the supplemental petition and has moved this Court to strike the allegations from the pleading. However, for reasons stated below, this issue need not be addressed by this Court.