# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Robert Edward Gura,**
**Petitioner Below, Petitioner**

**vs.)  No. 18-1088** (Ohio County 08-F-101)

**Charles Williams, Superintendent,**
**Huttonsville Correctional Center,**
**Respondent Below, Respondent**

**FILED**

**March 13, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Robert Edward Gura, by counsel Jeremy B. Cooper, appeals the Circuit Court of Ohio County's November 15, 2018, order denying his petition for a writ of habeas corpus. Respondent Charles Williams, Superintendent, by counsel Scott E. Johnson, filed a response.[1] On appeal, petitioner argues that the circuit court erred in failing to hold an evidentiary hearing and allocate funds to him for the hiring of an expert. Petitioner also argues that the circuit court lacked jurisdiction over the habeas proceeding because the circuit clerk failed to assign the matter a civil case number.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Effective July 1, 2018, the positions formerly designated as "wardens" are now designated "superintendents." *See* W. Va. Code § 15A-5-3. Further, petitioner originally listed Karen Pszczokowski, the superintendent of Northern Correctional Facility, as respondent in this matter. However, petitioner has since been transferred to Huttonsville Correctional Center, where Charles Williams is the current superintendent. As such, the appropriate public officer has been substituted in accordance with Rule 41 of the Rules of Appellate Procedure.

1

In May of 2008, petitioner, his wife, and Ms. Buchanan ("the victim") began drinking beer at petitioner's apartment. Following an argument with the victim, petitioner took a kitchen knife and attempted to slit her throat, only cutting her in the process. Petitioner then stabbed the victim in the chest and prevented her from calling police for approximately one hour afterwards.[2] Petitioner was arrested and, in September of 2008, was indicted on one count of malicious assault, one count of attempted murder, one count of assault during the commission of a felony, and one count of first-degree robbery. Due to petitioner's use of alcohol and prescribed medication at the time of the crimes, petitioner's counsel requested an evaluation of petitioner's competency and criminal responsibility.[3] Dr. Thomas R. Adamski performed the evaluation of petitioner in December of 2008. Dr. Adamksi concluded that petitioner was competent to stand trial and that he was able to appreciate the wrongfulness of his behaviors and could have conformed his conduct to the requirement of the law. Specifically, Dr. Adamski noted that although petitioner claimed he did not remember his argument with the victim, he did remember "politely" asking her to leave his home. Further, petitioner allegedly instructed the victim not to tell first responders that he stabbed her, implying that he had the capacity for knowledge of wrongfulness. Dr. Adamski also noted that petitioner's acts were not the product of psychosis or delusion. Following receipt of the report, petitioner's counsel advised the trial court that he did not find anything "that would serve as a basis to move this case on any other track in terms of either lack of competency or lack of culpability."

Petitioner's trial commenced in May of 2009. The State presented the testimony of the victim, who testified that petitioner attacked her after she offered him $5 to purchase cigarettes after previously claiming she had no money to buy another case of beer. Petitioner accused the victim of lying about not having money, demanded that she give him the $5, and ordered her to leave. The victim went to put on her shoes and leave, but refused to give petitioner $5. The victim testified that at that point, petitioner went into the kitchen and came back with a knife, which he put to her throat and said, "[d]ie, bitch." Petitioner then began to pull the blade along the victim's throat. The victim was able to push the blade away, only receiving a gash in her neck and her finger. However, the force spun the victim around so that she was facing petitioner, who then plunged the knife into her chest. According to the victim, petitioner then pulled the knife out of her chest and said, "[f]*ck, I'm going to prison." Petitioner forced the victim to remain in the bathroom for an hour before eventually permitting her to call 9-1-1. However, petitioner threatened the victim and instructed her to say she did not know who stabbed her. Nonetheless, when police arrived, the victim disclosed that petitioner had been the one to stab her.

---

[2]Petitioner eventually allowed the victim to call 9-1-1, and the victim survived her injuries.

[3]Testimony at trial revealed that petitioner, the victim, and petitioner's wife consumed between two to three cases of beer on the night of the crime.

2

The State also presented the testimony of law enforcement officers. A police officer testified that upon arriving at petitioner's residence, petitioner was able to communicate with him "[v]ery well" and was able to walk without assistance. Further, petitioner was able to coherently respond to the magistrate while being arraigned. It was the police officer's opinion that petitioner was able to comprehend what was occurring. A second police officer testified that he read petitioner his *Miranda* rights and confirmed that petitioner understood them.[4] Petitioner responded coherently to the officer's booking inquiries.

Petitioner presented the testimony of his wife, Ms. Gura. Ms. Gura testified that petitioner was intoxicated on the night of the incident, but was able to speak normally during the course of events, was making sense, and was coherent. Ms. Gura agreed that petitioner was able to walk down stairs and did not fall. Ms. Gura also testified that petitioner did stab the victim, but not over $5. Rather, Ms. Gura testified that petitioner stabbed the victim because she refused to leave his home.

Following the close of evidence, petitioner's counsel requested an instruction on voluntary intoxication. The trial court stated

> And the question is whether there's evidence to support [petitioner's] theory that his intoxication at the time of the crime was such that he was unable to formulate the requisite intent to commit a specific-intent crime; it is error for the trial Court to refuse to give a proper instruction presenting such a theory when requested to do so.
>
> . . . .
>
> So the real question is: Is there evidence in this case that [petitioner] was so intoxicated to the level that is required under West Virginia law to give that instruction? I've listened very carefully to all the evidence. And while you have testimony that quantitatively there was a considerable amount of beer consumed, but that of and in itself doesn't establish that he was intoxicated. Depends on the individual. Ms. Gura testified, in her opinion, he was. We have substantial evidence to the contrary, primarily evidence that he was not impaired in any way. Speech was not slurred, went down to the police department, cooperated with them. His gait was not impaired; he walked down the steps. All in all, I don't believe there is sufficient evidence in this case to justify giving any instruction on intoxication.

Accordingly, the trial court denied petitioner's requested voluntary intoxication instruction. After deliberations, the jury acquitted petitioner of the first-degree robbery charge, but found him

---

[4]*Miranda v. Arizona*, 384 U.S. 436 (1966).

guilty of the remaining charges. Following trial, the State filed a recidivist information against petitioner.

At a sentencing hearing held in June of 2009, the trial court sentenced petitioner to life with mercy for the attempted murder conviction, not less than two nor more than ten years of incarceration for the malicious assault conviction, and not less than two nor more than ten years of incarceration for the assault during the commission of a felony conviction. The trial court ordered that the sentences run consecutively. This Court refused petitioner's subsequent petition for appeal.

The circuit court appointed petitioner counsel to pursue habeas corpus relief in July of 2010. After various counsel were appointed and withdrew from the case, petitioner, by counsel, filed a petition for a writ of habeas corpus in November of 2015. Relevant to this appeal, petitioner raised grounds regarding mental competency at the time of the crime, instructions to the jury, and ineffective assistance of counsel related to those claims. In September of 2016, petitioner filed a motion requesting funds to hire an expert. Specifically, petitioner wanted to hire Bobby A. Miller, M.D., "to evaluate him and issue a report concerning diminished capacity as of the time of the alleged offense and/or any other pertinent issues involving mental capacity." Petitioner also moved the habeas court to relocate him to Western Regional Jail to undergo the evaluation. After receiving respondent's response and petitioner's reply, the habeas court denied the motion in January of 2018. Specifically, the habeas court found that petitioner had already been evaluated by Dr. Adamski prior to trial and failed to cite any case law that would entitle him to another evaluation almost eight years after his trial. The habeas court further found that the trial court properly addressed petitioner's request for instructions.

In February of 2018, petitioner filed another motion requesting funds to hire an expert regarding his ineffective assistance of counsel claim. The habeas court denied petitioner's motion requesting funds to hire an expert regarding his ineffective assistance of counsel claim and denied his petition for writ of habeas corpus later in February of 2018. The habeas court found that the trial court had properly reviewed the case law and the evidence concerning voluntary intoxication and determined that a diminished capacity instruction was not warranted. The habeas court concurred with the opinion and further found that even if an expert opined that petitioner had a diminished capacity at the time of the stabbing, there was other testimony and evidence regarding petitioner's actions that would have contradicted the expert's testimony. Regarding petitioner's claim that his counsel was ineffective for failing to hire an expert to speak to his diminished capacity at trial, the habeas court found that petitioner failed to prove that, but for this alleged failure, the result would have been different. Moreover, regarding his request to hire an expert for the habeas proceedings, the habeas court found that petitioner failed to advance any law in support of appropriating funds to hire an expert witness for his ineffective assistance of counsel claims. Accordingly, the habeas court concluded that petitioner failed to advance any

4

issues or law that are cognizable in habeas proceedings, or that were of constitutional magnitude, and found that petitioner could not satisfy the second prong of the *Strickland*/*Miller* test.[5]

For unknown reasons, counsel for petitioner did not receive a copy of the order until August of 2018. As such, he requested that the habeas court re-enter the final order for appeal purposes. The habeas court re-entered the final order on November 15, 2018. It is from this order that petitioner appeals.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *Anstey v. Ballard*, 237 W. Va. 411, 787 S.E.2d 864 (2016).

On appeal, petitioner first assigns as error the habeas court's failure to hold an "evidentiary hearing on numerous factual questions, including expert testimony that was necessary to determine whether [petitioner] had a valid diminished capacity defense that was unreasonably and prejudicially abandoned by his trial counsel." Essentially, petitioner sets forth two arguments in support. First, he contends the habeas court erred in denying his requests for funds to hire an expert witness regarding his claims of diminished capacity at the time the crime was committed and ineffective assistance of counsel. Second, petitioner claims that the habeas court should have held an evidentiary hearing to present evidence regarding his claims of ineffective assistance of counsel. According to petitioner, the habeas court was without sufficient information on a material issue regarding his habeas claims and that expert testimony was necessary to make a determination. Upon our review, we find that petitioner is not entitled to relief.

First, we find no merit in petitioner's claims that the habeas court erred in refusing to appropriate funds to allow petitioner to hire expert witnesses during the habeas proceedings. Petitioner fails to cite to any law that entitles him to use expert witnesses during habeas proceedings, let alone any law that requires the habeas court to provide the funds to do so. Indeed, the only case that petitioner cites in support of his argument is a memorandum decision noting that indigent criminal defendants are entitled to public funds to retain expert witnesses in their defense *at trial*. *See State v. Strawser*, No. 16-1039, 2017 WL 5513617 (W. Va. Nov. 17,

---

[5]*See Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

2017)(memorandum decision). Given that petitioner argues that he should have been allowed to present expert testimony at the habeas proceedings, this case does not support his argument. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on . . . . [and] must contain appropriate and specific citations to the record on appeal. . . . The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. Accordingly, we decline to find error here.

We likewise find no merit in petitioner's argument that the habeas court erred in failing to hold an evidentiary hearing on his habeas claims. We have previously noted that

> [i]t is evident from a reading of W.Va. Code § 53-4A-7(a) that a petitioner for habeas corpus relief is not entitled, as a matter of right, to a full evidentiary hearing in every proceeding instituted under the provisions of the post-conviction habeas corpus act. . . . A hearing is required only "[i]f it appears to the court . . . that there is probable cause to believe that the petitioner may be entitled to some relief and that the contention or contentions and grounds (in fact or law) advanced have not been previously and finally adjudicated or waived." Even in such circumstances, there is no requirement that a full evidentiary hearing be conducted.

*Gibson v. Dale*, 173 W. Va. 681, 688, 319 S.E.2d 806, 813 (1984) (footnote omitted). The decision to hold a hearing rests in the "sound discretion" of the circuit court. *Tex S. v. Pszczolkowski*, 236 W. Va. 245, 253, 778 S.E.2d 694, 702 (2015) (citation omitted). Specifically,

> [i]f the facts were sufficiently developed at or before trial so that the court can rule on the issue presented without further factual development, the court may, in its discretion, decline to conduct an evidentiary hearing during the habeas proceeding and may rule on the merits of the issues by reference to the facts demonstrated on the record.

*Gibson*, 173 W. Va. at 689, 319 S.E.2d at 814.

Here, petitioner contends that his counsel was ineffective for failing to fully pursue a diminished capacity defense at trial and an evidentiary hearing was necessary for the habeas

court to decide that issue. Although petitioner's trial counsel sought to include an instruction on diminished capacity, or voluntary intoxication, petitioner contends that his counsel was ineffective in failing to present expert testimony at trial regarding this issue. According to petitioner, the two prongs of *Strickland/Miller* are easily met given that he was prejudiced by his counsel's failure to present a diminished capacity defense and that there was a reasonable probability that, had his counsel presented such a defense, he could have been convicted of a lesser-included offense.

> In Syllabus Point 5 of *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995), we held:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

"Failure to meet the burden of proof imposed by either part of the *Strickland/Miller* test is fatal to a habeas petitioner's claim." *State ex rel. Vernatter v. Warden, W. Va. Penitentiary*, 207 W. Va. 11, 17, 528 S.E.2d 207, 213 (1999) (citing *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 321, 465 S.E.2d 416, 423 (1995)).

Contrary to petitioner's claims, the habeas court had a sufficient factual basis to deny petitioner habeas relief regarding his claim of ineffective assistance of counsel without holding a hearing. The record demonstrates that prior to petitioner's trial, his counsel requested an evaluation to ascertain petitioner's competency to stand trial and criminal responsibility. Counsel's motion requesting the evaluation noted that petitioner had a history of alcohol and substance abuse and was "highly intoxicated" at the time of the incident. The trial court granted the motion, and Dr. Adamski performed the evaluation. In his report, Dr. Adamski noted that the issue was to "determine whether or not a mental illness, mental retardation, *or addiction* have so affected" petitioner such that he was unable to appreciate the charges against him and participate in his defense, as well as to determine whether he was able to appreciate the wrongfulness of his behavior at the time of the crime. (Emphasis added). Dr. Adamski made several references to the fact that petitioner had been drinking on the night of the incident, had consumed Depakote for his bipolar disorder on the night of the incident, and was an alcoholic. Dr. Adamksi concluded that petitioner was competent to stand trial and that he was able to appreciate the wrongfulness of his behaviors and could have conformed his conduct to the requirements of the law, specifically relying on petitioner's memories of the night, which indicated he remembered the incident better than he claimed and also appreciated the wrongfulness of his actions. Dr. Adamski also noted that petitioner's acts were not the product of psychosis or delusion. Following receipt of the report, petitioner's counsel advised the trial court that he did not find anything "that would serve as a basis to move this case on any other track in terms of either lack of competency or lack of culpability." Nevertheless, petitioner's counsel requested a diminished capacity instruction on the basis of his voluntary intoxication.

7

In denying petitioner's claim, the habeas court affirmed the trial court's determination that a diminished capacity instruction was not supported by the evidence. The habeas court noted that testimony at trial established that petitioner was coherent, communicated clearly, and responded to questions by police and the magistrate. Further, petitioner was able to walk down stairs and did not sway or fall. The habeas court determined that, even if petitioner's trial counsel had acquired expert testimony regarding petitioner's diminished capacity due to voluntary intoxication, the overwhelming evidence to the contrary would not have changed the result.

Petitioner fails to establish that he is entitled to relief under either prong of *Strickland/Miller*. First, petitioner fails to establish that his counsel's performance was defective under an objective standard of reasonableness. Petitioner's counsel requested an evaluation regarding his criminal responsibility due to his consumption of alcohol on the night of the incident. As noted above, Dr. Adamski clearly considered these facts in rendering his decision. Following receipt of the report, petitioner's counsel determined that there was no viable "track" to take regarding lack of culpability. Nevertheless, petitioner's counsel requested an instruction regarding diminished capacity due to his voluntary intoxication. While petitioner claims that his trial counsel should have acquired another expert, he fails to explain what information the expert could have provided in addition to Dr. Adamski's report that would have changed the result below. Here, petitioner's counsel took adequate steps to protect any defense resulting from petitioner's intoxication. That his counsel was unsuccessful in acquiring an instruction on the matter does not prove that his assistance was ineffective. Accordingly, we find that petitioner fails to satisfy the first prong of *Strickland/Miller*.

While this failure is fatal to petitioner's claim, we nevertheless address the second prong of *Strickland/Miller*. Petitioner likewise fails to prove that there was a reasonable probability that, but for trial counsel's ineffective assistance, the result would have been different. As the habeas court noted, substantial evidence was presented that petitioner was not so intoxicated as to suggest he was not criminally responsible. The habeas court determined that, even if trial counsel had presented another expert regarding petitioner's intoxication, the result likely would not have been different. Moreover, petitioner's claims that he could have been convicted of a lesser-included offense are purely speculative. As such, we find that petitioner failed to satisfy the second prong of *Strickland/Miller*, and therefore, his entire claim regarding ineffective assistance of counsel fails. Moreover, because "the facts were sufficiently developed at or before trial," the habeas court was within its discretion to deny petitioner's claim without holding an evidentiary hearing. *Gibson*, 173 W. Va. at 689, 319 S.E.2d at 814. Accordingly, we find no error.[6]

---

[6]In support of his argument, petitioner claims that the habeas court erred in finding that he failed to advance any issues of constitutional magnitude. Petitioner contends this finding is erroneous given that both his right to hire an expert and his ineffective assistance of counsel claim are of constitutional magnitude. However, the circuit court's finding in its entirety reads that "[p]etitioner has not advanced any issues or law that are cognizable in a [h]abeas corpus [p]etition, or are of constitutional magnitude, and cannot satisfy the second prong of

(continued . . .)

Petitioner next assigns as error the habeas court's lack of jurisdiction. According to petitioner, his "post-conviction habeas proceeding has been entirely conducted in the context of a felony case." Petitioner contends that his habeas case was conducted under his criminal proceeding case number and that he was not assigned a new civil case number. As such, the habeas court "presented its orders in the context of a criminal matter, in clear violation of statute" and "those orders are void." We disagree.

Petitioner correctly notes that West Virginia Code § 53-4A-1 provides that

[a]ny such [habeas] petition shall be filed with the clerk of the Supreme Court of Appeals, or the clerk of any circuit court, said Supreme Court of Appeals and all circuit courts of this state having been granted original jurisdiction in habeas corpus cases by the Constitution of this state, or with the clerk of any court of record of limited jurisdiction having criminal jurisdiction in this state. Jurisdiction is hereby conferred upon each and every such court of record of limited jurisdiction having criminal jurisdiction (hereinafter for convenience of reference referred to simply as a "statutory court") to refuse or grant writs of habeas corpus ad subjiciendum in accordance with the provisions of this article and to hear and determine any contention or contentions and to pass upon all grounds in fact or law relied upon in support thereof in any proceeding on any such writ made returnable thereto in accordance with the provisions of this article. *All proceedings in accordance with this article shall be civil in character and shall under no circumstances be regarded as criminal proceedings or a criminal case.*

(Emphasis added). While it is true that the statute provides that habeas proceedings shall not be regarded as criminal proceedings, there is no evidence suggesting that the habeas court treated the underlying matter as a criminal proceeding in any way. Contrary to petitioner's claim that the habeas court "deprived itself of jurisdiction" by failing to assign the case its own civil number, the record is clear that this was simply an overlooked clerical error. The habeas court did not apply inapplicable criminal standards in this habeas proceeding at any point. The fact that the habeas court simply proceeded under a criminal case number did not convert the habeas proceedings into criminal proceedings, nor did it revoke the habeas court's jurisdiction. As such, petitioner is entitled to no relief in this regard.

---

*Strickland/Miller* to wit: there is a reasonable probability that the result would have been different." As such, it is clear that the habeas court applied the applicable law in regard to petitioner's claim of ineffective assistance of counsel and did not dismiss the matter based on its lack of "constitutional magnitude." Moreover, as shown above, petitioner fails to demonstrate that he is entitled to relief under either of these arguments. As such, if any error occurred, it was harmless given petitioner's failure to show that he was entitled to relief and the finding is ultimately irrelevant to the issues on appeal.

For the foregoing reasons, we affirm the circuit court's November 15, 2018, order denying petitioner's petition for a writ of habeas corpus.

Affirmed.

**ISSUED:**  March 13, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison