**FILED**

**June 15, 2021**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2021 Term**

_____

**No. 19-0785**

_____

**BRIAN EMERSON DEMENT,**
Petitioner Below, Petitioner

**V.**

**KAREN PSZCZOLKOWSKI,**
**SUPERINTENDENT NORTHERN CORRECTIONAL FACILITY,**
Respondent Below, Respondent

_____

Appeal from the Circuit Court of Cabell County
The Honorable Alfred E. Ferguson, Judge
Civil Action No. 18-C-441

**REVERSED AND REMANDED**
**WITH INSTRUCTIONS**

_____

Submitted: March 23, 2021
Filed: June 15, 2021

| | |
|---|---|
| **Abraham Saad** | **Patrick Morrisey** |
| **SAAD DIXON Law Offices PLLC** | **Attorney General** |
| **Huntington, West Virginia** | **Katherine M. Smith** |
| **Steven A. Drizin, pro hac vice** | **Assistant Attorney General** |
| **Gregory Swygert, pro hac vice** | **Scott E. Johnson** |
| **Center on Wrongful Convictions** | **Assistant Attorney General** |
| **Chicago, Illinois** | **Charleston, West Virginia** |
| **Attorneys for the Petitioner** | **Attorneys for the Respondent** |

**CHIEF JUSTICE JENKINS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.    "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

2.    "On an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syllabus point 2, *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973).

3.    "A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief." Syllabus point 1, *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973).

i

4.	"West Virginia Code section 53-4A-7(c) (1994) requires a circuit court denying or granting relief in a habeas corpus proceeding to make specific findings of fact and conclusions of law relating to each contention advanced by the petitioner, and to state the grounds upon which the matter was determined."  Syllabus point 1, *State ex rel. Watson v. Hill*, 200 W. Va. 201, 488 S.E.2d 476 (1997).

**Jenkins, Chief Justice:**

Petitioner Brian Emerson Dement ("Mr. Dement") appeals the August 7, 2019 order of the Circuit Court of Cabell County denying his post-conviction petition for writ of habeas corpus. On appeal, Mr. Dement asserts, *inter alia*, that the circuit court failed to provide a meaningful evidentiary hearing and that the circuit court's order is insufficient. Having considered the briefs submitted on appeal, the appendix record, the parties' oral arguments, and the applicable legal authority, we reverse the Circuit Court of Cabell County's denial of Mr. Dement's petition for writ of habeas corpus and remand with instructions for the circuit court to hold an omnibus evidentiary hearing and to enter an order with sufficient findings of fact and conclusions of law that complies with West Virginia Code section 53-4A-7 and Rule 9 of the West Virginia Rules Governing Post-Conviction Habeas Corpus Proceedings.

## I.

## FACTUAL AND PROCEDURAL HISTORY

This matter presents a lengthy and complicated factual and procedural history that spans almost twenty years. Accordingly, prior to discussing Mr. Dement's habeas petition, we will first provide a recitation of the factual history. Then, we will address the underlying habeas proceedings.

*A. August 2002 Murder and Initial Investigation*[1]

On August 8, 2002, the body of a young female, later identified as Deanna Crawford ("Ms. Crawford"), was found in an unoccupied, abandoned barn-like structure by a logging crew working in the remote area of Hickory Ridge in Cabell County, West Virginia. It was determined that Ms. Crawford was twenty-one years old at the time of her death.[2] She was found on her back with her arms and legs straight out and her hands above her head. At the time she was found, Ms. Crawford did not have any pants or undergarments on the lower half of her body and her shirt was rolled up above her waist. A pair of leopard print pants were found adjacent to her body.

It was concluded that Ms. Crawford's right hyoid bone was fractured with extensive laceration of the right hyoid cartilage. Accordingly, the cause of Ms. Crawford's death was determined to be manual strangulation. Numerous contusions and abrasions were found on her lower extremities. There was also blood found on the leopard print pants and Ms. Crawford's left hand. Investigating officers gathered physical evidence from the scene, including, but not limited to, beer cans, cigarette butts, an elastic hairband, a glass mug, and the pair of leopard print pants. None of the physical evidence, however,

---

[1] As described more fully below, Mr. Dement ultimately pled guilty and never had a trial. Consequently, many of the facts concerning the initial investigation have been taken from the original trial of two of Mr. Dement's codefendants, Nathaniel and Phillip Barnett.

[2] It appears from the record that at the time Ms. Crawford was found, she had been dead for approximately three to five days.

connected the death of Ms. Crawford to any suspects, and the investigation eventually came to a standstill until January of 2007.

## B. *Investigation Resumed*

On January 11, 2007, Deputy Jim Schiedler of the Cabell County Sheriff's Office advised the West Virginia State Police ("the WVSP") that he had been "contacted by Greg Bailey who claimed to have information involving a several year old murder of a female on Hickory Ridge in Salt Rock, West Virginia." The WVSP report provides that Mr. Bailey informed Deputy Schiedler that "his nephew, Brian Dement, had told him that he had committed the crime with three (03) other individuals: Phillip Barnett, Nate Barnett, and Justin Black." Furthermore, the WVSP report indicated that during an interview, Mr. Bailey stated that

> approximately two (02) years prior . . . , around February or March 2005, he had a conversation with his nephew, Brian Dement . . . . Bailey was with Dement at Dement's residence . . . in Huntington, West Virginia. Dement was drinking alcohol and began telling of an incident involving himself and three (03) other guys. They had "picked up" a girl and had her on an abandoned farm. Dement told Bailey that he and the three (03) other guys had raped the girl, then got scared and had to kill her. Bailey advised that Dement gave some detail of the murder by explaining how they had pulled out some of the victim's fingernails, eyebrows, pubic hairs and tortured her. Dement said he personally had kicked the victim in the head and that was what killed her. Dement also told Bailey something about the victim getting stung by bees.

Mr. Bailey disclosed to the WVSP that Mr. Dement told similar stories with varying details to other friends and family members. Mr. Bailey's wife, Kelly Bailey, also gave a

3

statement to the WVSP that Mr. Dement had told her that he "killed a girl on Hickory Ridge in Salt Rock on a farm." Mr. and Mrs. Bailey then attempted to record a conversation with Mr. Dement confessing to the murder. On the recording, Mr. Bailey asks Mr. Dement if he was involved in just the one murder. Mr. Dement replied only with an "Mum hum." Mrs. Bailey asked Mr. Dement what possessed him to do something like that, and he said, "I don't know." Mr. Bailey then asked Mr. Dement if he did it or if the others did it. Mr. Dement replied that "[t]hey did it." He said he was just present.

### C. Mr. Dement's Statements to Law Enforcement

On January 28, 2007, at approximately 7:05 in the evening, the WVSP located Mr. Dement at his residence. Mr. Dement agreed to be interviewed, and he was transported to the Huntington, West Virginia, detachment. At approximately 7:23 p.m., Mr. Dement was advised of his *Miranda*[3] rights, he signed a Waiver of Rights Form, and he agreed to be interviewed without an attorney.[4] In his initial written statement, Mr. Dement detailed the following events. One summer evening, approximately four years prior, Nathaniel Barnett came to his home, and they walked to a party at Justin Black's mother's home. Once at the party, Mr. Dement had a few beers and played video games

---

[3] *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[4] Law enforcement testified in the underlying criminal proceedings that they did not notice that Mr. Dement appeared to be intoxicated or under the influence during questioning. However, Mr. Dement later stated that he had taken Xanax prior to giving the statements.

4

with Phillip Barnett until Mr. Black asked them to go for a car ride. Eventually, Mr. Dement, Mr. Black, the Barnett brothers, and a "girl" got into a black or blue car that was parked in the driveway. Mr. Black drove for approximately three to five minutes and then pulled to the side of the road on Hickory Ridge. At this point, without any provocation, Phillip Barnett "lean[ed] up" and "punche[d] the girl up front really hard right in [her] head around her cheek and temple[.]" Mr. Black and the Barnett brothers then exited the car. Philip Barnett "grabb[ed] the girl by the neck and hair and pulled her out of the car." Mr. Dement said he "was in shock and just sat there." Mr. Black and the Barnett brothers "started dragging the girl down the path and her feet were dragging." They disappeared "off into the darkness" for ten to fifteen minutes. When Mr. Black and the Barnett brothers returned to the car, "the girl was not with them." Mr. Dement claimed to overhear Philip Barnett and Mr. Black discussing "the girl's neck snapping." Mr. Dement, Mr. Black, and the Barnett brothers drove back to the house party. Once there, Mr. Dement "took off running down the road" and walked to Route 10, where he called a cab from a grocery store. The cab allegedly picked him up between 2:00 and 3:00 a.m. and took him to his Uncle Jimmy's home. After giving this statement to the police, Mr. Dement underwent a polygraph examination; however, the results were inconclusive.

The following day, in the early morning hours, Mr. Dement gave a second written statement. While there were similarities in this second statement, there were also several variances. In particular, Nathaniel Barnett, not Mr. Black, came into the bedroom and asked him and Philip Barnett to take a car ride. Additionally, in this version, as soon

as Mr. Black stopped the car on Hickory Ridge, he (Mr. Dement) "went to the passenger side" of the car where he "grabbed [the girl] out of the car by her neck" and "dr[agged] her down the hill about 20-30 yards by her neck." When the girl began screaming, Mr. Dement "punched her in the face to shut her up." While she was on the ground, Philip Barnett "started punching her real hard in the head and kicking her," as Mr. Black and Nathaniel Barnett urged him on. Then, Mr. Dement said, "guys I'm out of here," and he "hid in the bushes beside the car[.]" Thus, Mr. Black and the Barnett brothers were alone with the girl for ten to fifteen minutes. Also, different from his initial statement, Mr. Dement claimed that, when the screams stopped, he "went back up to see the girl" and found her "kind of curled up." He checked her neck for a pulse; however, knowing she was dead, Mr. Dement "ran over the hill and walked to [Route] 10. . . . all the way to Huntington to [his] Uncle Jimmy's house," which, he claimed, took him a "couple hours."[5]

Shortly after this second written statement was given, Mr. Dement gave a third statement, which was the first to be recorded. Once again, this confession included new details and inconsistencies. In this version, when asked to describe the girl, Mr. Dement stated that "she was white[,] . . . medium build[,] you know not fat, not real, real skinny, . . . and that's about all I can remember." He could not describe the length of her hair, and he could not describe what she was wearing, how she got to the party, or who she

---

[5] Counsel for Mr. Black previously has proffered that the actual distance is 17.2 miles, and it would take an estimated five hours and fifty minutes to walk that far.

6

was with. Mr. Dement claimed that the girl was left curled up even though she was found on her back with her hands over her head and her legs straight out. Additionally, Mr. Dement said the girl's clothes were on her when he left her, but, when she was found, she was only partially clothed, and her pants were next to her body.

Mr. Black also made statements during a police interrogation that occurred only hours after Mr. Dement's recorded statement. *See State v. Black*, 227 W. Va. 297, 308, 708 S.E.2d 491, 502 (2010) ("Mr. Black gave both an oral and a written statement, wherein he stated that he drove a car containing the victim and three other individuals to an abandoned farm. He further stated that he stayed by the car while the other passengers went down a path.").

A criminal complaint was filed against Mr. Dement on January 29, 2007, asserting that Mr. Dement committed the first-degree murder of Ms. Crawford in 2002. Additionally, Mr. Dement was charged with malicious wounding for an unrelated domestic incident. Subsequently, Mr. Dement was indicted in the Circuit Court of Cabell County for the first-degree murder of Ms. Crawford and the malicious wounding of Brittany Wolfe ["Ms. Wolfe"].[6]

---

[6] The indictment was not included in the Appendix Record; however, during Mr. Dement's guilty plea hearing, the circuit court explained, with respect to the charge of the first-degree murder of Ms. Crawford, that,

between the 4th day of August 2002, and the 8th day of August 2002, [] [Mr. Dement], along with Nathaniel Todd Barnett,

7

*D. Initial DNA Testing and April 11, 2007 Psychological Assessment*

A March 1, 2007 WVSP forensic laboratory report indicated that Mr. Dement and the Barnett brothers were excluded as donors of the DNA samples obtained from five cigarette filters and a glass found near Ms. Crawford's body.

On April 11, 2007, Mr. Dement was given a psychological assessment. He admitted having "a problem with [X]anax, cannabis, and opiates[.]" His abuse of alcohol, sedatives, amphetamines, and hallucinogens led to a heart attack at age 24 in 2005. The assessment also noted that Mr. Dement had been diagnosed with bipolar disorder. Mr. Dement denied any involvement in Ms. Crawford's murder.

*E. Mr. Dement's Plea Agreement*

On October 23, 2007, Mr. Dement pled guilty to the second-degree murder of Ms. Crawford and entered an *Alford*/*Kennedy* plea to the malicious wounding of Ms. Wolfe.[7] On April 25, 2008, the circuit court held a sentencing hearing. Regarding Count

---

Phillip Scott Barnett, and Justin Keith Black, jointly committed the offense of murder by unlawfully and feloniously, willfully and maliciously, and deliberately slaying and killing [Ms. Crawford] by strangulation . . . .

Further, the indictment included an unrelated count for malicious wounding in 2007 against Ms. Wolfe, who was Mr. Dement's girlfriend at the time.

[7] The initial criminal proceedings were before the Honorable John L. Cummings.

8

I of the indictment, the court sentenced Mr. Dement to thirty years in a State penitentiary for second-degree murder. Regarding Count II of the indictment, the court sentenced Mr. Dement to a period of not less than two nor more than ten years for malicious wounding. The sentences were to run concurrently.

### F. Statements to Investigators and Codefendants' 2008 Trials

Days after Mr. Dement pled guilty, he gave a recorded statement to Nathaniel Barnett's private investigator indicating that he had lied to the police during his initial statements. Specifically, Mr. Dement stated that "we all are innocent" and that he wanted to "go against [his] statement," but his lawyers and the court would not allow him to do so.

Mr. Black and the Barnett brothers then each went to trial. Following an initial mistrial, Mr. Black's second trial began on April 15, 2008. Mr. Dement testified at this trial pursuant to his plea agreement, and, based upon this testimony, in which he disavowed his recantations, Mr. Black was convicted of second-degree murder. Mr. Black was sentenced to forty years imprisonment, which was affirmed by this Court on appeal. *See generally Black*, 227 W. Va. 297, 708 S.E.2d 491. The Barnett brothers' joint trial began in August of 2008. Mr. Dement once again provided testimony consistent with his plea agreement, and the Barnett brothers were subsequently convicted of second-degree murder. Nathaniel Barnett was sentenced to forty years, and Philip Barnett was sentenced to thirty-six years. On appeal, this Court found that the trial court abused its discretion when it excluded Mr. Dement's prior inconsistent statements, and we reversed the Barnett

9

brothers' respective convictions and remanded for a new trial. *See generally State v. Barnett*, 226 W. Va. 422, 701 S.E.2d 460 (2010). The Barnett brothers subsequently entered *Alford/Kennedy* pleas to the voluntary manslaughter of Ms. Crawford; Philip Barnett also pled guilty to malicious wounding of an individual not identified in the record. According to Mr. Dement, Mr. Black and the Barnett brothers each have admitted to some involvement in the murder of Ms. Crawford to the West Virginia Parole Board.

### G. Post-Conviction DNA Testing and Additional Statements

On November 18, 2015, Mr. Black filed a motion for post-conviction DNA testing pursuant to West Virginia Code section 15-2B-14 (eff. 2004). The motion requested DNA testing on (1) the sexual assault kit; (2) the leopard print pants; (3) Ms. Crawford's fingernail scrapings; and (4) an empty beer can, Skoal snuff can, five cigarettes, and a glass mug recovered by evidence technicians. Following the filing of the motion, the Barnett brothers filed a motion to join Mr. Black's motion for post-conviction DNA testing, which the court granted. By order entered September 29, 2016, the court granted the motions for DNA testing.[8]

Pursuant to the court's orders, the selected evidence was sent to Bode Cellmark Forensics' ("Bode") laboratory for advanced forensic DNA testing utilizing

---

[8] Two amended orders were subsequently entered regarding the DNA, the contents of which are not relevant to the issues on appeal.

technologies that were not in existence at the time of the original DNA testing. Bode issued a report on August 22, 2017, finding Ms. Crawford's vaginal swabs were inconclusive for male DNA, and her rectal and oral swabs, as well as her pubic hair combings, had no male DNA present. However, Bode issued a second report in October of 2017 that revealed a single-source, Combined DNA Index System ("CODIS") eligible Y-STR DNA profile derived from both semen and skin cells from the crotch of the leopard print pants. The single source profile excluded Mr. Dement, Mr. Black, and the Barnett brothers as donors. The same DNA profile also matched a Basic brand cigarette butt recovered at the crime scene.

The DNA profile was uploaded into the CODIS system to determine whether a match could be found. On December 18, 2017, the Cabell County Prosecuting Attorney informed Mr. Black and the Barnett brothers that a positive match to the DNA profile had been found. Specifically, the single source of DNA belonged to a convicted and recently incarcerated felon named Timothy Smith ("Mr. Smith"). Mr. Smith's criminal history includes a 2011 conviction for unlawful sexual activity with a thirteen-year-old girl in the State of Ohio. Mr. Smith is an admitted frequenter of prostitutes and drug abuser.

In February of 2018, the WVSP and a private investigator separately interviewed Mr. Smith at Chillicothe Correctional Institution in Ohio. Mr. Smith stated that he "never 'hung out' with younger boys during that time" and that he did not know Mr. Dement, Mr. Black, or the Barnett brothers. Moreover, despite his DNA being found

11

on the crotch of her pants, Mr. Smith denied knowing Ms. Crawford.[9]  He further claimed that he did not recognize a picture of her and asserted that he had never had a sexual relationship with her.  The WVSP informed Mr. Smith that his DNA was found at the crime scene, but he denied any involvement in the murder.  Mr. Smith also told police that "he never harmed anyone and that no one in his past would say he was a violent person."  Conversely, both the WVSP and the private investigator interviewed two of Mr. Smith's numerous ex-wives, and both described Mr. Smith as a domestic abuser.  Mrs. Craft was married to Mr. Smith during the summer of 2002.  Mrs. Craft indicated that, when she was married to Mr. Smith, he was "extremely violent" with her.  Mrs. Craft further stated that less than a week before she saw television news reports of Ms. Crawford's death, Mr. Smith came home with blood on his hands and in possession of money with blood on it.  When Mrs. Craft inquired about the blood, Mr. Smith responded by saying "something about hitting someone and killing them."  Another ex-wife, Mrs. Ford, recounted similar physical abuse.  Mrs. Ford recalled an incident where Mr. Smith threatened to kill her "like he had killed a prostitute."  Mr. Smith told her that "he had hit [a prostitute] over the head and that [his cousin] Jerry Lee Perry strangled the victim."  They then "hid her body in the hills."

On March 12, 2018, Mr. Dement once again recanted his previous confession during an interview with a private investigator.  The private investigator informed Mr.

---

[9] Local law enforcement knew Ms. Crawford as a prostitute and drug abuser in the Cabell County area.

Dement about the recent DNA results, and Mr. Dement responded that he was not surprised because the confessions he made to law enforcement were made while he was under the influence and he had been there for "hours and hours." Mr. Dement asserted to the private investigator that he had told law enforcement that he was "high on Xanaxes." When the private investigator asked Mr. Dement about the previously taped confessions to his uncle, Mr. Bailey, Mr. Dement replied, "I remember hearing tapes that I got from the discovery— the tapes, and it was all blurred. I mean, I didn't make no sense at all, because I was just— I was strung out on drugs[.]" Additionally, on several occasions throughout the interview with the private investigator, Mr. Dement explained that he had tried to take back his previous admissions/confessions; however, the prosecuting attorney told him that they were all going to be convicted because the statements were written, and Mr. Dement could face a longer sentence.

In April of 2019, Mr. Smith was deposed. During this deposition, he admitted to regularly paying prostitutes with pills for sexual favors. Mr. Smith also acknowledged that he smoked Basic brand cigarettes. He further attempted to explain how his DNA was found at the crime scene by suggesting that Ms. Crawford must have been at his house at some point, stolen a used cigarette, and taken it to the crime scene. He also explained his semen by offering that, at some point, Ms. Crawford must have performed oral sex on him in exchange for pills, and she likely spat his ejaculate onto the inside of her pants.

*H. Post-Conviction Petition, Hearing, and Order*

Following the revelations related to the new DNA test results, Mr. Dement filed a petition for writ of habeas corpus ("habeas petition") and accompanying memorandum of law in support in the Circuit Court of Cabell County on August 31, 2018.[10] The habeas petition raised three grounds for relief: (1) newly discovered DNA evidence, (2) freestanding claim of innocence, and (3) his guilty plea should be withdrawn based upon a manifest injustice. In his accompanying memorandum of law, Mr. Dement argued that he was entitled to vacatur of his conviction or, alternatively, to a new trial or omnibus hearing. Subsequently, Mr. Dement filed his first supplement to his pending petition for writ of habeas corpus and a motion to compel the State to answer the petition.[11] On April 26, 2019, the State filed its response requesting that the circuit court dismiss the petitions for post-conviction relief filed by each defendant, including Mr. Dement.

On February 4, 2019, a notice of hearing was served on the parties indicating an omnibus evidentiary hearing would be held on May 1 and May 2, 2019. Prior to the scheduled hearing, the parties filed stipulated facts. Specifically, the parties stipulated to the following. First, DNA testing was conducted between the time period following the recovery of Ms. Crawford's body in August 2002 through the arrests and convictions of

---

[10] Mr. Black and the Barnett brothers also filed petitions for post-conviction relief. The post-conviction proceedings were before a different judge than the initial proceedings, the Honorable Alfred E. Ferguson.

[11] This was a joint filing with Mr. Black and the Barnett brothers.

Mr. Dement, Mr. Black, and the Barnett brothers in 2007. Second, the DNA and scientific technology available and utilized during the initial investigation was not able to obtain the results that were subsequently obtained following the circuit court's September 29, 2016, November 1, 2016, and April 26, 2017 orders granting post-conviction DNA testing. Third, during the initial investigation, the WVSP's lab examination of a pair of leopard print pants showed that no semen was indicated. Last, the current DNA testing revealed that (1) semen was indicated on the interior crotch of the leopard print pants found next to Ms. Crawford's body at the scene of the crime; (2) the DNA testing revealed a single source sample that excluded each of the habeas petitioners as the source; (3) using a search in CODIS, it was determined that the single source of the sample matched the DNA profile of Timothy A. Smith; (4) a single source DNA profile was obtained from a Basic brand cigarette filter that excluded each of the habeas petitioners; (5) it was determined that the single source of the sample from the cigarette filter also matched the DNA profile of Timothy A. Smith; and (6) the WVSP determined that the profile obtained from the pants was crime-related.

The circuit court held a hearing on May 1, 2019, and first considered Mr. Black's and the Barnett brothers' cases together. The circuit court judge stated that "[t]his is a complex case. I have had to read parts of the transcripts. I haven't read all of them. The ones -- the parts that I thought were important I have read. I have read all kinds of pleadings. I have read all kinds -- I have read cases that have been decided." The circuit court judge further stated that while he had "spent the last week on this case[,]" he

15

admittedly did not read everything in the file. The court then found that the DNA evidence was newly discovered evidence. The court found that manifest injustice was established in the Barnett brothers' cases and that their guilty pleas should be withdrawn and that they were entitled to new trials. The circuit court next found that Mr. Black was also entitled to a new trial based on the newly discovered DNA evidence.

The court then turned its attention to Mr. Dement. Specifically, the court stated that "in this case I have probably done less work on this one than any of the other ones, but the only thing I saw in the file was a Pro Se Petition that he had filed." Counsel for Mr. Dement promptly informed the court that the statement was incorrect because Mr. Dement had filed a counseled petition relying on the newly discovered evidence. In response, the court stated that it was "going to wing it[.]" The following exchange occurred:

> The Court: Here is what I am going to do for you because I don't think you have a leg to stand on.
>
> I am going to let you vouch the record on what evidence you want -- you would want to put on here today.
>
> And I know you had this set up.
>
> [Mr. Dement's Counsel]: Sure.
>
> The Court: When I came in this morning I saw this. So[,] I am going to let you vouch the record with whatever witness you had here and what you feel like they would testify to, and then I am going to throw you out of court.
>
> I mean, I don't think he has a claim.

But anyway, you are welcome to do that --

[Mr. Dement's Counsel]: Sure.

The Court: -- for purpose of appeal.

Mr. Dement's counsel went on to vouch the record for appeal purposes. The evidence he would have presented included: the newly discovered DNA evidence, evidence regarding the crime scene itself, the deposition testimony of Mr. Smith, testimony from three of Mr. Smith's ex-wives, testimony from Mr. Smith's brother, and an expert in false confessions. Ultimately, the court stated the following:

> I wouldn't have had any problem at all if he would have pled not guilty and gone to trial and been convicted and then you find this DNA. He would have had a new trial. Just like the other defendants.
>
> But his case to me, even though what he is saying, is different from the other three because they have always maintained their innocence.
>
> [Mr. Dement] has always maintained his guilt until he filed the Petition.

On May 10, 2019, the circuit court entered an order memorializing its earlier rulings granting post-conviction relief for Mr. Black and the Barnett brothers. Specifically, the circuit court found that "[t]he DNA evidence constitutes newly discovered evidence entitling each [of the codefendants] to a new trial." Furthermore, the circuit court found that Philip Barnett and Nathaniel Barnett "met the manifest injustice standard outlined in *State v. Olish*, 164 W. Va. [712, 266 S.E.2d 134] (1980), entitling them to withdraw their guilty pleas." Accordingly, the circuit court reinstated their respective original indictments

17

and set a hearing date where the State was to announce whether it intended to re-try the codefendants.

The circuit court entered its order denying Mr. Dement habeas relief on August 7, 2019.[12] In its three-page order, the circuit court found that Mr. Dement "was not entitled to have his conviction vacated, nor was he entitled to a new trial or other relief." In arriving at its denial, the circuit court relied on the record and Mr. Dement's "confessions, including confessions to family members outside of police custody, sworn

---

[12] We note that the court entered this order *nunc pro tunc* as of May 1, 2019. Mr. Dement filed several objections to the circuit court's order, including that the order should not have been entered *nunc pro tunc* and that the order was deficient under both the West Virginia Code and the West Virginia Rules Governing Post-Conviction Habeas Corpus Proceedings. On appeal, no party has raised the issue of whether a notice of appeal was timely filed in this matter. Nevertheless, "where neither party to an appeal raises, briefs, or argues a jurisdictional question presented, this Court has the inherent power and duty to determine unilaterally its authority to hear a particular case. Parties cannot confer jurisdiction on this Court directly or indirectly where it is otherwise lacking." Syl. pt. 2, *James M.B. v. Carolyn M.*, 193 W. Va. 289, 456 S.E.2d 16 (1995). Moreover, this Court has held that "'[a] nunc pro tunc order must be based on some memorandum on the records relating back to the time it is to be effective and such order cannot be entered if the rights of the parties may be adversely affected thereby.' Syl. pt. 3, *State ex rel. Palumbo v. County Court of Kanawha County*, 151 W. Va. 61, 150 S.E.2d 887 (1966)[, *overruled in part, on other grounds by Qualls v. Bailey*, 152 W. Va. 385, 164 S.E.2d 421 (1968)]." Syl. pt. 3, *Barber v. Barber*, 195 W. Va. 38, 464 S.E.2d 358 (1995). In the present case, the circuit court's order accurately reflects the judge's rulings during the May 1, 2019 hearing; however, by rendering the order effective May 1, 2019, without any prior notice to the parties, it adversely affected Mr. Dement by seemingly depriving him of any time to file an appeal. Mr. Dement filed his notice of appeal within thirty days from August 7, 2019, and timely perfected his appeal thereafter. Therefore, we deem the ordered entered August 7, 2019, as opposed to May 1, 2019 and Mr. Dement's appeal timely.

testimony by [Mr. Dement] in the trials of co-defendant's [*sic*], and sworn testimony at the entry of his plea as [the] basis for his decision." The circuit court

> held that based on the foregoing considerations, the newly discovered DNA results would not likely provide a different result at a new trial in light of [Mr. Dement's] sworn testimony, guilty plea, and other incriminating statements and upon consideration that such evidence was not the basis of [Mr. Dement's] conviction[.]

The circuit court further ruled that Mr. Dement's

> conviction is not a "manifest injustice" as contemplated by *State v. Olish*, 164 [W. Va. 712, 266 S.E.2d 134 (1980)] and there is no evidence that the multiple confessions of [Mr. Dement] were "false confessions" in light of the fact that [Mr. Dement] first confessed to family members outside of police custody and that subsequent custodial and testimonial statements were largely consistent with [Mr. Dement's] initial voluntary, non-custodial confession.

From this order, Mr. Dement now appeals to this Court.

## II.

## STANDARD OF REVIEW

In this appeal, Mr. Dement challenges the circuit court's order denying his petition for writ of habeas corpus. We review the circuit court's order under the following standard:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

19

Syl. pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).  Moreover, "[o]n an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syl. pt. 2, *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973).  With these standards in mind, we now address the arguments presented.

## III.

## DISCUSSION

On appeal, Mr. Dement asserts multiple assignments of error contending that the circuit court erred by denying him habeas relief.  First, Mr. Dement alleges that the circuit court abused its discretion when it ignored both undisputed facts and the applicable law in denying his habeas petition.  Second, Mr. Dement avers that the circuit court abused its discretion by making a serious mistake in weighing the *State v. Frazier*[13] factors and

---

[13] In the Syllabus of *State v. Frazier*, 162 W. Va. 935, 253 S.E.2d 534 (1979), this Court set forth the grounds for a new trial based upon newly discovered evidence:

"A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules:  (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained.  (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict.  (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of

determining that the new DNA evidence would likely not provide a different outcome at a new trial. Third, Mr. Dement contends that the circuit court abused its discretion by relying on an improper factor when it foreclosed his newly discovered evidence argument, in part, based on his guilty plea. Last, Mr. Dement asserts that the circuit court abused its discretion by denying him the opportunity to present new exculpatory evidence at a hearing and by failing to produce a sufficient written order under the West Virginia Code and the Rules Governing Post-Conviction Habeas Corpus Proceedings. Upon review by this Court, we find that Mr. Dement is entitled to an omnibus evidentiary hearing and an order with sufficient findings of fact and conclusions of law. Because we are reversing the circuit court's order for its failure to provide Mr. Dement with an evidentiary hearing and a sufficient order, we need not address his other assignments of error.

Mr. Dement alleges that the circuit court abused its discretion "by ruling based solely off [the] briefs – that it did not read – before even hearing what evidence [Mr.] Dement wished to present." Brief of Petitioner at 37. Superintendent Karen Pszczolkowski ("Respondent Superintendent") did not provide any arguments as to why an evidentiary

---

the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side." Syllabus Point 1, *Halstead v. Horton*, 38 W. Va. 727, 18 S.E. 953 (1894)[, *overruled in part, on other grounds by State v. Bragg*, 140 W. Va. 585, 87 S.E.2d 689 (1955)].

21

hearing was not necessary in this case.[14]  Under the facts of this case, we agree with Mr.

Dement that the circuit court erred by failing to hold a meaningful evidentiary hearing on

the grounds raised in his habeas petition.

West Virginia Code section 53-4A-7(a) (eff. 2008) provides that the

decision to hold an evidentiary hearing is at the discretion of the circuit court.  Specifically,

> [i]f the petition, affidavits, exhibits, records and other
> documentary evidence attached thereto, or the return or other
> pleadings, or the record in the proceedings which resulted in
> the conviction and sentence . . . show to the satisfaction of the
> court that the petitioner is entitled to no relief, or that the
> contention or contentions and grounds (in fact or law)
> advanced have been previously and finally adjudicated or
> waived, the court shall enter an order denying the relief
> sought.  If it appears to the court from said petition, affidavits,
> exhibits, records and other documentary evidence attached
> thereto, or the return or other pleadings, or any such record or
> records referred to above, that there is probable cause to
> believe that the petitioner may be entitled to some relief and
> that the contention or contentions and grounds (in fact or law)
> advanced have not been previously and finally adjudicated or
> waived, the court shall promptly hold a hearing and/or take
> evidence on the contention or contentions and grounds (in fact
> or law) advanced, and the court shall pass upon all issues of
> fact without a jury.  The court may also provide for one or
> more hearings to be held and/or evidence to be taken in any
> other county or counties in the state.

*Id.*  Furthermore, we previously have held that

---

[14] During oral argument, counsel for Respondent Superintendent asserted that a full evidentiary hearing was unnecessary because the circuit court allowed Mr. Dement to vouch the record with the evidence he would have presented.  However, for the reasons discussed herein, we find this argument to be unpersuasive under the facts of this case.

> "[a] court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief."

Syl. pt. 1, *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973). Accordingly, the circuit court has discretion when deciding whether to hold an evidentiary hearing on a petition for writ of habeas corpus and whether to grant or deny relief on a petition for writ of habeas corpus.

However, this discretion is not without limits and exceptions. *See Gibson v. Dale*, 173 W. Va. 681, 688-89, 319 S.E.2d 806, 813 (1984) ("In essence, then, the post-conviction habeas corpus statute leaves the decision of whether to conduct an evidentiary hearing . . . in large part to the sound discretion of the court before which the writ is made returnable. This discretion is not unlimited, however, and the court must be guided by the necessities of each particular case." (internal citations omitted)). For example, one notable exception we previously have recognized is for an allegation of ineffective assistance of counsel. In *Losh v. McKenzie*, 166 W. Va. 762, 764, 277 S.E.2d 606, 609 (1981), this Court said:

> In general, the post-conviction habeas corpus statute . . . contemplates that every person convicted of a crime shall have a fair trial in the circuit court, an opportunity to apply for an appeal to this Court, and one omnibus post-conviction habeas corpus hearing at which he may raise any collateral issues which have not previously been fully and fairly litigated.

23

Furthermore, as we observed in *Losh*,

> [f]requently habeas corpus petitioners seek collateral review of evidentiary or constitutional questions, such as the admissibility of a confession or failure to exclude physical evidence, when those issues were fully and fairly litigated during the trial and a record of the proceedings is available. . . .

> There are other issues, however, such as incompetency of counsel, a coerced guilty plea, an unkept plea bargain, and sanity at the time the guilty plea was entered which will not have been raised or litigated in the underlying proceeding.

*Id.* at 765, 277 S.E.2d at 609. In *Losh*, we concluded that "[t]hose issues . . . of which [the petitioner] would have been unaware at trial, must be litigated in a collateral proceeding." *Id.* at 767, 277 S.E.2d at 610. *See also Joseph S. v. Plumley*, No. 15-1137, 2016 WL 5338238, at *2 (W. Va. Sept. 23, 2016)(memorandum decision) ("Therefore, we conclude that the circuit court abused its discretion in not holding a hearing on petitioner's ineffective assistance [of] counsel claims."); *Sherrod v. Ballard*, Nos. 13-1141, 14-0232, 2014 WL 4662484, at *3 (W. Va. Sept. 19, 2014)(memorandum decision) (same); *State ex rel. Watson v. Hill*, 200 W. Va. 201, 205, 488 S.E.2d 476, 480 (1997) ("We direct the Circuit Court of Wood County [to] hold a habeas corpus hearing on the merits of the Petitioner's ineffective assistance claim and to issue an order that includes findings of fact and conclusions of law relating to each contention advanced by the Petitioner as required by West Virginia Code section 53-4A-7(c).").

Aside from the potential exceptions explained above, this Court previously also has noted that

24

in *Townsend v. Sain*, 372 U.S. 293, 313, 83 S. Ct. 745, 757, 9 L. Ed. 2d 770 (1963)[, *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1, 112 S. Ct. 1715, 118 L. Ed. 2d 318 (1992)], the United States Supreme Court concluded that federal courts must conduct evidentiary hearings upon application for a writ of habeas corpus by a state prisoner in the following circumstances:

> If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) *there is a substantial allegation of newly discovered evidence*; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Gibson*, 173 W. Va. at 689 n.8, 319 S.E.2d at 814 n.8 (emphasis added). We went on to state that

> [a]lthough the relevant provisions of the federal habeas corpus statutes differ substantially from the provisions of W. Va. Code § 53-4A-1 *et seq.*, we think the list of circumstances announced in *Townsend* provides excellent guidance for the courts of this State in determining whether an evidentiary hearing should be conducted in a particular habeas corpus proceeding.

*Id.* Therefore, while the relevant provisions of the federal habeas corpus statutes have recently changed[15] and differ from the provisions of our habeas corpus statutes, we still are

---

[15] In this regard, the federal habeas corpus statutory framework changed through the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") that "was signed into law on April 24, 1996[.]" *Hernandez v. Caldwell*, 225 F.3d 435, 437 (4th Cir. 2000).

of the opinion that the list of circumstances announced in *Townsend* "provides excellent guidance for the courts of this State in determining whether an evidentiary hearing should be conducted in a particular habeas corpus proceeding." *Gibson*, 173 W. Va. at 689 n.8, 319 S.E.2d at 814 n.8.

In the matter sub judice, the limited grounds brought in Mr. Dement's habeas petition were (1) newly discovered DNA evidence, (2) freestanding claim of innocence, and (3) his guilty plea should be withdrawn based upon a manifest injustice, all based upon the same newly discovered DNA evidence. These issues raised in the habeas petition center around newly discovered DNA test results[16] that were favorable to Mr. Dement. Because the favorable newly discovered evidence was not available at the time of the original criminal proceedings and Mr. Dement was unaware of the evidence, it could not have been previously "fully and fairly litigated" and would not have been a part of the record of the proceedings below. *See Losh*, 166 W. Va. at 764-65, 277 S.E.2d at 609. Moreover, here, the habeas judge was not the same judge in the underlying criminal proceedings, and the circuit court admittedly did not read the entire habeas petition and accompanying exhibits to make a reasoned decision. Additionally, despite the fact that the circuit court allowed the record to be vouched, the circuit court made clear during the May 1 hearing that it had already decided it was going to deny Mr. Dement's habeas petition

_____

[16] The circuit court below found the DNA test results to be newly discovered evidence, and there has been no cross-assignment of error asserted regarding this ruling.

26

and was allowing the record to be vouched for appeal purposes only. This was not a meaningful presentation and consideration of the evidence. Further, as explained below, the circuit court's order was wholly insufficient pursuant to the applicable law. Therefore, under these particular circumstances, the circuit court needed to hold an evidentiary hearing as to the grounds raised in Mr. Dement's habeas petition.[17]

Also, Mr. Dement avers that the circuit court failed to enter an order making specific findings of fact and conclusions of law relating to each contention in the habeas petition and the grounds upon which the matter was determined. To the contrary, the Respondent Superintendent's sole argument with regard to the sufficiency of the court's order is that "[w]hile the circuit court's order is sparse, it is sufficient to provide this Court with a basis to enter an appellate order affirming the circuit court's judgment." Brief of Respondent at 30. Respondent Superintendent failed to provide any analysis as to how the "sparse" order is sufficient and cites to only one case as support, again with no analysis.

---

[17] We recognize that there are certain instances where there is potentially newly discovered evidence, but where an evidentiary hearing is not necessary. *See, e.g.*, *State ex rel. Green v. Mirandy*, 12-0078, 2013 WL 500212, *2 (W. Va. Feb. 11, 2013)(memorandum decision) ("In the present matter, the circuit court did not err in failing to hold an evidentiary hearing. A review of the record presented and of the circuit court's order shows that the circuit court properly determined, without the necessity of a hearing, that petitioner was not entitled to relief."). However, as explained herein, this is not one of those instances.

27

As this Court previously has observed, "[j]ust as an appellate court must determine the merits of an appeal after examining the underlying proceedings, a habeas court has a duty to fully examine the record before deciding whether any basis exists to afford relief to a habeas petitioner." *Watts v. Ballard*, 238 W. Va. 730, 735, 798 S.E.2d 856, 861 (2017). Additionally, "West Virginia Code section 53-4A-7(c) (1994) requires a circuit court denying or granting relief in a habeas corpus proceeding to make specific findings of fact and conclusions of law relating to each contention advanced by the petitioner, and to state the grounds upon which the matter was determined."[18] Syl. pt. 1, *Watson*, 200 W. Va. 201, 488 S.E.2d 476. Specifically, West Virginia Code section 53-4A-7(c) provides that

> [w]hen the court determines to deny or grant relief, as the case may be, the court shall enter an appropriate order with respect to the conviction or sentence in the former criminal proceedings and such supplementary matters as are deemed necessary and proper to the findings in the case, including, but not limited to, remand, the vacating or setting aside of the plea, conviction and sentence, re[-]arraignment, retrial, custody, bail, discharge, correction of sentence and resentencing, or other matters which may be necessary and proper. In any order entered in accordance with the provisions of this section, the court shall make specific findings of fact and conclusions of law relating to each contention or contentions and grounds (in fact or law) advanced, shall clearly state the grounds upon which the matter was determined, and shall state whether a federal and/or state right was presented and decided. Any order entered in accordance with the provisions of this section shall constitute a final judgment, and, unless reversed, shall be conclusive.

---

[18] We note that West Virginia Code section 53-4A-7 was amended in 2008. However, these amendments are not relevant to this matter.

Similarly, Rule 9 of the West Virginia Rules Governing Post-Conviction Habeas Corpus Proceedings states:

> (c) The court shall draft a comprehensive order including: (1) findings as to whether a state and/or federal right was presented in each ground raised in the petition; (2) findings of fact and conclusions of law addressing each ground raised in the petition; (3) specific findings as to whether the petitioner was advised concerning his obligation to raise all grounds for post[-]conviction relief in one proceeding; and (4) if the petitioner appeared pro se, specific findings as to whether the petitioner knowingly and intelligently waived his right to counsel.

Here, the circuit court admitted that it had not reviewed the entire file and, perhaps even more significant, did not appear to have read the entirety of Mr. Dement's habeas petition in the first instance. Furthermore, the circuit court's order fails to comply with the express requirements of Rule 9 of the West Virginia Rules Governing Post-Conviction Habeas Corpus Proceedings and West Virginia Code section 53-4A-7. The order does not (1) clearly state the grounds upon which the matter was determined, (2) state whether a federal and/or state right was presented and decided, or (3) make specific findings as to whether the petitioner was advised concerning his obligation to raise all grounds for post-conviction relief in one proceeding. Most importantly, the order does not sufficiently set forth factual findings and conclusions of law as to each contention raised in the habeas petition. Accordingly, the circuit court's order denying habeas relief is reversed, and this case is remanded with instructions to grant Mr. Dement a hearing on his petition requesting a writ of habeas corpus based on newly discovered evidence.

Additionally, on remand, the circuit court must in its order set forth sufficient findings of fact and conclusions of law and fully comply with Rule 9 and West Virginia Code section 53-4A-7.


## IV.

## CONCLUSION

For the reasons set forth above, the August 7, 2019 final order is reversed, and this case is remanded with instructions for the Circuit Court of Cabell County to hold an evidentiary hearing on the merits of Mr. Dement's habeas corpus petition and to thereafter issue an order that includes sufficient findings of fact and conclusions of law relating to each contention advanced by Mr. Dement as required by Rule 9 of the West Virginia Rules Governing Post-Conviction Habeas Corpus Proceedings and West Virginia Code section 53-4A-7.

Reversed and Remanded with Instructions.