IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2024 Term

**FILED**
**November 7, 2024**
**released at 3:00 p.m.**
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 22-720

JONATHAN FRAME,
Superintendent, Mt. Olive Correctional Complex,
Respondent Below, Petitioner,

v.

JOHNNY RAY MILLER,
Petitioner Below, Respondent.

Appeal from the Circuit Court of Raleigh County
The Honorable Robert A. Burnside, Jr., Circuit Judge
Civil Action No. 12-C-360

REVERSED

Submitted: October 23, 2024
Filed: November 7, 2024

Patrick Morrisey, Esq.
Attorney General
Andrea Nease-Proper, Esq.
Deputy Attorney General
Office of the Attorney General
Charleston, West Virginia
Counsel for Petitioner

Kevin J. Robinson, Esq.
Pullin, Fowler, Flanagan,
Brown & Poe, PLLC
Beckley, West Virginia
Counsel for Respondent

JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE HUTCHISON, deeming himself disqualified, did not participate in the decision.

JUDGE SEAN K. HAMMERS sitting by temporary assignment.

SYLLABUS BY THE COURT

1.      "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus Point 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

2.      "Our post-conviction habeas corpus statute, W.Va. Code § 53-4A-1 *et seq.* (1981 Replacement Vol.), clearly contemplates that a person who has been convicted of a crime is ordinarily entitled, as a matter of right, to only one post-conviction habeas corpus proceeding during which he must raise all grounds for relief which are known to him or which he could, with reasonable diligence, discover." Syllabus Point 1, *Gibson v. Dale*, 173 W. Va. 681, 319 S.E.2d 806 (1984).

3.      "A judgment denying relief in post-conviction habeas corpus is res judicata on questions of fact or law which have been fully and finally litigated and decided, and as to issues which with reasonable diligence should have been known but were not raised, and this occurs where there has been an omnibus habeas corpus hearing at which the applicant for habeas corpus was represented by counsel or appeared pro se having

i

knowingly and intelligently waived his right to counsel." Syllabus Point 2, *Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981).

4.      "A prior omnibus habeas corpus hearing is res judicata as to all matters raised and as to all matters known or which with reasonable diligence could have been known; however, an applicant may still petition the court on the following grounds: ineffective assistance of counsel at the omnibus habeas corpus hearing; newly discovered evidence; or, a change in the law, favorable to the applicant, which may be applied retroactively." Syllabus Point 4, *Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981).

5.      "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syllabus Point 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

6.      "In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the

same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." Syllabus Point 6, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

7. "In deciding ineffective [] assistance claims, a court need not address both prongs of the conjunctive standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995), but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test." Syllabus Point 5, *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 465 S.E.2d 416 (1995).

WALKER, Justice:

Respondent Johnny Miller had been unsuccessful in his prior challenges—two appeals and four habeas petitions—to his 1989 conviction for first-degree murder. But the Circuit Court of Raleigh County granted Mr. Miller's fifth petition for a writ of habeas corpus on the ground of ineffective assistance of trial counsel in advising Mr. Miller to refuse a plea offer to second-degree murder. Though Mr. Miller had previously been denied habeas relief on the same grounds, the circuit court found that the change-in-the-law exception to res judicata could be applied to allow the claim to go forward given the 2012 decision of the Supreme Court of the United States decision in *Lafler v. Cooper*.[1] Petitioner Jonathan Frame, Superintendent of the Mount Olive Correctional Complex[2] appeals from that order.

Even were we to find that *Lafler* signifies a change in the law, any purported change *Lafler* made is not favorable to Mr. Miller's previously-litigated claims because his claim was denied on a basis unaffected by that decision altogether. Specifically, *Lafler* affirms the right to effective counsel at the plea bargaining stage, an extension already recognized by West Virginia courts, and afforded to Mr. Miller in his prior habeas

---

[1] 566 U.S. 156 (2012).

[2] Since the filing of the petition, the acting superintendent at Mt. Olive Correctional Complex has changed and the Court has made the necessary substitution of parties under Rule 41(c) of the West Virginia Rules of Appellate Procedure.

1

proceedings. And, *Lafler* has no effect on the standard for objectively-deficient advice of counsel, which two tribunals have previously found that Mr. Miller's allegations against his trial counsel failed to meet. Because *Lafler* does not demand that those prior conclusions be revisited, res judicata applies to bar Mr. Miller's successive habeas claim and the circuit court erred in granting him relief.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Mr. Miller was indicted in 1989 for first-degree murder with use of a firearm related to the shooting of his girlfriend, Lorelei Reed. Mr. Miller and Ms. Reed had a tumultuous relationship leading up to the evening of her death, and he did not deny having shot Ms. Reed. Rather, Mr. Miller insisted that the murder weapon had discharged while he and Ms. Reed were engaged in a physical struggle, and that he could not be sure whether he or Ms. Reed pulled the trigger. He also claimed that he was intoxicated when Ms. Reed was shot. The autopsy revealed that Ms. Reed's blood alcohol level was 0.187. Mr. Miller alleged he had been drinking with Ms. Reed all evening—a circumstance that would support the inference that his blood alcohol level would have been similarly detrimental to his mental state and capacity to form intent.

On April 20, 1989, the State informed Mr. Miller's trial counsel that it would accept a plea to second-degree murder if the offer was accepted by May 15 and presented

2

to the court by June 1.[3]  That plea offer was accompanied by a discovery disclosure that included Mr. Miller's statements to police and witness statements, as well as a disclosure of the State's intent to use evidence of prior domestic violence and Mr. Miller's prior threats against the victim.  Trial counsel relayed the offer to Mr. Miller by letter following day, advising him:

> I received a great deal of information from the State, including a transcript of your taped statement to the police, and also have received an offer that you plea to second degree murder with the use of a firearm.  While it is my belief that this is not a particularly good offer for us I think we should discuss it and would appreciate your calling in to make an appointment for that purpose.

Trial counsel rejected the plea offer on Mr. Miller's behalf four days later.  At trial, counsel presented an intoxication and accidental shooting defense consistent with Mr. Miller's statement to police.  While several witnesses testified that Mr. Miller had been drinking or smoking marijuana, none indicated that he was intoxicated to the point of losing control of his faculties.  The jury convicted Mr. Miller and he was sentenced to life imprisonment without mercy.

Mr. Miller filed a direct appeal from his conviction, and this Court affirmed, in part, and reversed, in part, and remanded the matter for the limited purpose of developing the record as to the State's failure to produce two police reports.  This Court instructed the

---

[3] Trial was set for July 31, 1989.

3

circuit court to determine the nature of those reports and whether the failure to provide them would be reversible error. The circuit court determined that any error was harmless. Mr. Miller appealed, and this Court refused that appeal by order on July 2, 1991.

In 1993, Mr. Miller filed his first petition for a writ of habeas corpus arguing, among other things, ineffective assistance of trial counsel related to counsel's advice to refuse the plea offer of second-degree murder.[4] The circuit court denied him relief by order dated February 3, 1994, erroneously finding that it had granted him an omnibus hearing.[5] Based on that erroneous finding, the circuit court granted Mr. Miller's motion for reconsideration and held an omnibus hearing in August 1994.

During the omnibus hearing, habeas counsel argued that trial counsel was objectively deficient for not advising Mr. Miller to take the plea offer to second-degree murder, stating that the deal was not discussed at length with Mr. Miller other than trial counsel believing it was a "bad deal" and that Mr. Miller had trusted his judgment. Mr. Miller testified during the hearing, acknowledging that he had been aware of the offer and discussed it with counsel. The court engaged in the following discussion with Mr. Miller:

> The Court: – did you desire – are you telling me now
> you – you then desired to take that offer, or are you saying to

[4] Raleigh County Circuit Court Case No. 93-HC-64-C.

[5] During the omnibus hearing and in the order that followed, the circuit court noted that it was so acquainted with the record that it believed it had, in fact, held an omnibus hearing. On rehearing, the court assured Mr. Miller that every ground raised in his habeas petition would be considered again.

me now, on second thought, you wish you would have taken that offer?

[Mr. Miller]: Well, sir, to be honest with you, after the State did produce some statements from people, I'd say a week before the trial, right, that this person was turning me in and stuff like that, and I never heard nothing about it, you know, and [trial counsel] never had known nothing about it, you know what I'm saying?

On cross-examination, the State established that the plea offer was made several months before trial and that trial counsel had reviewed the State's evidence given to him at that time.[6] The State further demonstrated that Mr. Miller knew there was a time limit to the offer to either accept it or gamble with a trial, and that the plea deal was never reoffered closer to trial after the State's case strengthened. Finally, when asked whether he decided to take that gamble after counsel explained the evidence, the charge, and the offer, Mr. Miller testified that he did not deliberately or intentionally kill Ms. Reed, and that "[he] thought [he] would be able to prove [something]," lamenting that "[he] thought the witnesses could testify to the truth[.]"

The circuit court found that Mr. Miller had not received ineffective assistance of counsel and denied him habeas relief by order and opinion dated February 23, 1995. Mr.

---

[6] Despite this testimony, Mr. Miller argued in later habeas proceedings that trial counsel should have more thoroughly reviewed the State's discovery.

5

Miller appealed the denial of habeas relief, and this Court refused that appeal by order dated July 10, 1996.

Mr. Miller filed his second habeas petition[7] in 2002, arguing ineffective assistance of habeas counsel at the omnibus hearing, and, again, that trial counsel was ineffective relative to the plea offer. To the latter, Mr. Miller argued that the February 23, 1995 order did not have res judicata effect because it summarily incorporated its findings from the February 3, 1994 order that was entered without benefit of an omnibus hearing and was later rescinded after granting the motion for reconsideration. The circuit court disagreed, finding that the 1995 order merely reflected that after hearing the testimony at the omnibus hearing, its prior conclusion that trial counsel was not ineffective had not changed. It thus incorporated its prior finding that,

> [e]xamination of the entire record in this case does not in any way establish that [Mr. Miller's] trial counsel was in any way ineffective. Several defenses were ably raised and there is no indication that his trial counsel did anything except what an experienced trial counsel would do in a criminal case or failed to do what he should have done by a like standard.

The circuit court therefore concluded that Mr. Miller's claim for ineffective assistance of trial counsel was barred by res judicata but went on to analyze the merits,

---

[7] The record also reflects findings by the circuit court that Mr. Miller filed a federal petition for a writ of habeas corpus in the United States District Court for the Southern District of West Virginia and that he was denied relief by order dated July 24, 1997. However, the documents related to that proceeding are not included in the appendix record.

6

applying the factors set forth in syllabus point 6 of *State v. Miller*,[8] and similarly found that trial counsel was not ineffective.[9]

Mr. Miller filed two more petitions for habeas relief[10] prior to filing the underlying petition in 2012, arguing that his claim for ineffective assistance of trial counsel should be revisited in light of *Lafler v. Cooper*.[11] Mr. Miller also rekindled his claim of ineffective assistance of habeas counsel. After holding an omnibus hearing, the circuit court granted Mr. Miller habeas relief as to ineffective assistance of trial counsel, finding that *Lafler* represented a change in the law favorable to Mr. Miller that could be applied retroactively as an exception to res judicata, but found that the ineffective assistance of habeas counsel claim was barred as having been fully litigated and decided in the 2002 habeas action.[12] Superintendent Frame appeals that order.

---

[8] 194 W. Va. 3, 459 S.E.2d 114 (1995).

[9] The circuit court also denied Mr. Miller relief on his ineffective assistance of habeas counsel claim.

[10] One petition was filed with this Court but was refused with leave to file in circuit court as to any matters not already fully and finally litigated. The other was filed in the Circuit Court of Raleigh County but that petition is unrelated to the issues discussed here.

[11] *Supra* n.1.

[12] Mr. Miller does not cross-assign error as to the denial of relief for ineffective assistance of habeas counsel.

7

## II.    STANDARD OF REVIEW

Before this Court, an order issuing a writ of habeas corpus is reviewed with proper deference to the habeas court in its fact-finding role, yet we maintain an obligation to independently evaluate the underpinning legal issues:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.[13]

## III.    ANALYSIS

The underlying petition for a writ of habeas corpus is Mr. Miller's fifth and he has had the benefit an omnibus hearing,[14] so we are mindful that,

> [o]ur post-conviction habeas corpus statute, W.Va. Code § 53–4A–1 *et seq.* (1981 Replacement Vol.), clearly contemplates that a person who has been convicted of a crime is ordinarily entitled, as a matter of right, to only one post-conviction habeas corpus proceeding during which he must raise all grounds for relief which are known to him or which he could, with reasonable diligence, discover.[15]

As Mr. Miller does not appear to dispute that this ineffective assistance of trial counsel claim has been fully and finally litigated in prior proceedings, our analysis begins with the

---

[13] Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

[14] *See* Syl. Pt. 1, *Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981).

[15] Syl. Pt. 1, *Gibson v. Dale*, 173 W. Va. 681, 319 S.E.2d 806 (1984).

presumption that Mr. Miller's claims are barred by res judicata consistent with this Court's holding in *Losh*:

> A judgment denying relief in post-conviction habeas corpus is res judicata on questions of fact or law which have been fully and finally litigated and decided, and as to issues which with reasonable diligence should have been known but were not raised, and this occurs where there has been an omnibus habeas corpus hearing at which the applicant for habeas corpus was represented by counsel or appeared pro se having knowingly and intelligently waived his right to counsel.[16]

But, we have recognized that application of res judicata in the habeas context is not without exception, and Syllabus Point 4 of *Losh* permits three:

> A prior omnibus habeas corpus hearing is res judicata as to all matters raised and as to all matters known or which with reasonable diligence could have been known; however, an applicant may still petition the court on the following grounds: ineffective assistance of counsel at the omnibus habeas corpus hearing; newly discovered evidence; or, a change in the law, favorable to the applicant, which may be applied retroactively.[17]

Here, the circuit court applied the third exception, finding that it could revisit Mr. Miller's contention that trial counsel was ineffective in advising him to deny the plea offer to second-degree murder based on *Lafler v. Cooper*, decided after exhaustion of his

---

[16] Syl. Pt. 2, *Losh*.

[17] *Id.* at Syl. Pt. 4.

9

habeas request for relief on those grounds.[18]  Consonant with the circuit court's conclusion that the *Lafler* decision operated to circumvent res judicata in Mr. Miller's case are three legal suppositions: (1) *Lafler* represents a change in the law; (2) that that change is favorable to Mr. Miller; and (3) that the changes may apply retroactively.  We thus turn to *Lafler*.

In a wider context, *Lafler*'s significance—and ineffective assistance of counsel claims, generally—is rooted in the right to counsel found in the Sixth Amendment to the United States Constitution[19] and correlative Section 14 of Article III of the West Virginia Constitution.[20]  That right extends to all critical stages of the proceedings and has been found to extend to the plea negotiation context.[21]  And, where a criminal defendant

---

[18] *Missouri v. Frye*, 566 U.S. 134 (2012) was issued the same day as *Lafler* and applied *Strickland* in the context of plea offers that were not communicated to the claimant seeking habeas relief.  *Lafler* and *Frye* are often addressed together as companion cases because they both underscore the right to effective counsel at the plea bargain stage, though in different factual contexts.  Because the facts at issue here are more consonant with *Lafler* than with *Frye*, Mr. Miller, understandably, relied on the former.  While noting their distinctions, because it has bearing on Mr. Miller's argument that these companion cases demonstrated a change in the law, we observe that this Court, in 1999, applied *Strickland/Miller* to the same circumstances as *Frye* in *Becton v. Hun*, 205 W. Va. 139, 516 S.E.2d 762 (1999).

[19] U.S. Const. amend. VI

[20] W. Va. Const. art. III, § 14.  *See also*, *State ex rel. Levitt v. Bordenkircher*, 176 W. Va. 162, 342 S.E.2d 127 (1986) ("The right of an accused in a criminal case to be represented by counsel is constitutional in nature. . . . Moreover, the right of the accused to be represented by counsel includes the right to 'effective assistance' of counsel." (citations omitted)).

[21] *McMann v. Richardson*, 397 U.S. 759, 771 (1970).

claims and proves that counsel was so ineffective so as to subvert that right, relief may be

had through a petition for a writ of habeas corpus.


*Strickland v. Washington* is the familiar 1984 decision of the Supreme Court

of the United States that outlines a two-step test to determine whether a criminal defendant

is entitled to relief based on a claim of ineffective assistance of counsel.  This Court adopted

that two-part test in *State v. Miller*[22]:

> In the West Virginia courts, claims of ineffective
> assistance of counsel are to be governed by the two-pronged
> test established in *Strickland v. Washington*, 466 U.S. 668, 104
> S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance
> was deficient under an objective standard of reasonableness;
> and (2) there is a reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceedings would have
> been different.[23]

Broadly stated, the first step is the "performance" prong and the second step is the

"prejudice" prong.[24]  We have clarified that both must be satisfied before relief may be had:

> [i]n deciding ineffective [] assistance claims, a court need not
> address both prongs of the conjunctive standard of *Strickland
> v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
> (1984), and *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114

---

[22] *But see infra*, n.45.

[23] Syl. Pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

[24] *See, e.g.*, *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 319, 465 S.E.2d 416, 421 (1995).

11

(1995), but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.[25]

In *Hill v. Lockhart*,[26] the Supreme Court held that *Strickland*'s test should also be applied to the plea context where a defendant agreed to plead guilty on advice of counsel.[27] Citing its prior holdings in *McMann*[28] and *Tollett*,[29] decided before *Strickland*, the Court recognized that its pronouncement on the performance prong in *Strickland* was "nothing more than a restatement" of the criteria already set forth in those cases to open pleas to collateral attack in habeas.[30] Stated differently, the later-developed performance prong of *Strickland* was already being applied to guilty pleas in the context of whether the plea was voluntary and intelligent: "[w]here a defendant enters a guilty plea upon counsel's advice, the voluntariness of the plea depends on whether the advice was within the range

---

[25] *Id.* at Syl. Pt. 5. *See also State ex rel. Vernatter v. Warden, West Virginia Penitentiary*, 207 W. Va. 11, 17, 528 S.E.2d 207, 213 (1999) ("Failure to meet the burden of proof imposed by either part of the *Strickland/Miller* test is fatal to a habeas petitioner's claim.").

[26] 474 U.S. 52 (1985).

[27] *Id.* at 52.

[28] *Supra* n.21

[29] *Tollett v. Henderson*, 411 U.S. 258 (1973) (holding that habeas claimant may attack the voluntary and intelligent character of the guilty plea by showing that counsel's advice fell below objective standards of competence under *McMann*).

[30] *Hill*, 474 U.S. at 58.

of competence demanded of attorneys in criminal cases."[31] But, with the adoption of the two-part test in *Strickland* came the recognition that even if counsel's advice falls below objective standards of competence, it does not necessarily follow that a criminal defendant was prejudiced by that advice.[32] Thus, the *Hill* court explained that, post-*Strickland*, to show prejudice in the guilty plea context, a habeas applicant must prove that but for counsel's errors, he or she would not have pleaded guilty and insisted on going to trial.[33]

*Lafler*, too, recognized that same right to effective counsel during the plea-bargaining process, just in the opposite factual circumstances of *Hill*.[34] In *Lafler*, the Supreme Court again applied the *Strickland* analysis, but to a set of facts where the defendant *rejected* a plea offer on the advice of counsel, went to trial, and was convicted.[35] *Strickland*'s performance prong was not at issue as all parties conceded that counsel's advice was objectively deficient.[36] The Supreme Court held that *Strickland*'s prejudice prong would be applied in that factual context by asking whether, but for counsel's errors,

---

[31] *Id.* at 52. *See also*, *Strickland*, 466 U.S. at 687 (citing *McMann* for proposition that effective assistance of counsel is judged on an objective standard of reasonableness).

[32] *Id.* at 59.

[33] *Id.*

[34] *Lafler*, 566 U.S. at 162.

[35] *Id.* at 163 ("[t]he question for this Court is *how* to apply *Strickland*'s prejudice test where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial.") (emphasis added).

[36] *Id.*

the plea would have been accepted by the defendant and presented to and accepted by the court.[37]  Once that prejudice is demonstrated, the *Lafler* Court observed that a fair trial, free of constitutional error does not necessarily cure it, and, under some circumstances, the appropriate remedy may be one crafted in specific performance to require the state to reoffer the plea.[38]

*Lafler* was not a marked departure from settled West Virginia law,[39] whose courts have recognized the right to effective counsel in the plea context for decades

---

[37] *Id.*

[38] *Id.* at 166, 171 ("Even if the trial itself is free from constitutional flaw, the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence.").

[39] Since we find that Mr. Miller's claim fails on the performance prong and is distinguishable from *Lafler* altogether, we need not specifically reach the question of whether it represents a "change in the law."  But, we note that the federal circuits that have addressed the issue have concluded with unanimity that it does not represent a change in the law for purposes of successive collateral attacks.  Rather, these courts have concluded that *Lafler* merely applied the same law (*Strickland*) to a different factual context.  *See Pagan-San Miguel v. U.S.*, 736 F.3d 44, 45 (1st Cir. 2013) (per curiam) ("We agree with every other circuit to have considered the issue that neither *Frye* nor [*Lafler*] established a 'new rule of constitutional law.'");  *Gallagher v. U.S.*, 711 F.3d 315 (2d Cir. 2013) (per curiam) ("Neither *Lafler* nor *Frye* announced 'a new rule of constitutional law': [b]oth are applications of *Strickland*[.]"); *Navar v. Warden Fort Dix FCI*, 569 Fed.Appx. 139 (3d Cir. 2013) (per curiam) (same); *Harris v. Smith*, 548 Fed. Appx. 79 (4th Cir. 2013) (per curiam) ("As the district court correctly explained, the Supreme Court's recent decisions in [*Frye*] and [*Lafler*] did not announce a new rule of constitutional law."); *In re King*, 697 F.3d 1189 (5th Cir. 2012) (per curiam) ("[*Lafler*] and *Frye* did not announce new rules of constitutional law because they merely applied the Sixth Amendment right to counsel to a specific factual context."); *In re Liddell*, 722 F.3d 737, 738-39 (6th Cir. 2013) (per curiam) ("[A]s held by every other circuit to consider the issue, neither *Frye* nor [*Lafler*] created a 'new rule of constitutional law' made retroactive to cases on collateral review by the

14

preceding *Lafler*[40] and have applied *Strickland/Miller* to test claims of ineffectiveness.[41]

At base, the practical effect of *Lafler* is to (1) apply *Strickland/Miller* in the context of plea

---

Supreme Court."); *Hare v. U.S.*, 688 F.3d 878, 879 (7th Cir. 2012) ("Neither *Frye* nor its companion case, [*Lafler*], directly addressed the old rule/new rule question, but the Court's language repeatedly and clearly spoke of applying an established rule to the present facts."); *Williams v. U.S.* 705 F.3d 293, 294 (8th Cir. 2013) (per curiam) ("In [*Lafler*] and *Frye*, the Court noted that its analysis was consistent with the approach many lower courts had taken for years, as well as with its own precedent. . . . We therefore conclude, as have the other circuit courts of appeals that have addressed the issue, that neither [*Lafler*] nor *Frye* announced a new rule of constitutional law."); *Buenrostro v. U.S.*, 697 F.3d 1137, 1140 (9th Cir. 2012) ("Because the Court in *Frye* and *Lafler* repeatedly noted its application of an established rule to the underlying facts, these cases did not break new ground or impose a new obligation on the State or Federal Government."); *In re Graham*, 714 F.3d 1181 (10th Cir. 2013) (per curiam) ("*Frye* and *Lafler* . . . do not establish a new rule of constitutional law."); *In re Perez*, 682 F.3d 930, 932-33 (11th Cir. 2012) (per curiam) ("[*Frye* and *Lafler*] confirm that the cases are merely an application of the Sixth Amendment right to counsel, as defined in *Strickland*, to a specific factual context.").

[40] *See e.g.*, Syl. Pt. 3, *Becton v. Hun*, 205 W. Va. 139, 516 S.E.2d 762 (1999) ("Objective professional standards dictate that a criminal defense attorney, absent extenuating circumstances, must communicate to the defendant any and all plea bargain offers made by the prosecution. The failure of defense counsel to communicate any and all plea bargain proposals to the defendant constitutes ineffective assistance of counsel, absent extenuating circumstances."); *Bordenkircher*, 176 W. Va. at 171-72, 342 S.E.2d at 137 (denying habeas relief for entry of guilty plea by applying *Strickland*); *Tucker v. Holland*, 174 W. Va. 409, 327 S.E.2d 388 (1985) (granting habeas relief for ineffective assistance of counsel in plea negotiations); Syl. Pt. 2, *State ex rel. Burton v. Whyte*, 163 W. Va. 276, 256 S.E.2d 424 (1979) ("Before an initial finding will be made that counsel acted incompetently with respect to advising on legal issues in connection with a guilty plea, the advice must be manifestly erroneous."); *Call v. McKenzie*, 159 W. Va. 191, 220 S.E.2d 665 (1975) (advising trial courts to develop a record when taking plea to aid in habeas corpus proceedings based on the same); *State ex rel. May v. Boles*, 149 W. Va. 155, 139 S.E.2d 177 (1964) (overruling prior cases and granting habeas relief to defendant who pleaded guilty without requesting counsel consistent with *Gideon v. Wainwright*, 372 U.S. 335 (1963)).

[41] Prior to *Miller*, ineffective assistance of counsel claims, at the plea stage and otherwise, were governed by Syllabus Point 19 of *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974), discussed *infra* as a substantially similar standard.

negotiations, even where the defendant rejects a plea and (2) acknowledge that an additional remedy is available to the habeas court in crafting relief *if* the court finds the claimant is entitled to such relief. Having established that West Virginia already recognized application of *Strickland/Miller* in that context, we further recognize that *Strickland/Miller*'s performance prong is barely acknowledged in *Lafler*, let alone altered by it.

Rather, *Lafler presupposes* deficient performance of trial counsel and, in so doing, speaks to the prejudice prong of *Strickland/Miller*: "the fact of deficient performance has been conceded by all parties. The case comes to us on that assumption, so there is no need to address this question."[42] More to the point, *Lafler* may require application of *Strickland/Miller* in the plea negotiation context to examine whether counsel provided objectively-deficient advice, but it does nothing to alter the *standard* for what constitutes objectively-deficient advice. In fact, as recognized in *Hall*, the trail of cases that culminated in the "performance prong" articulated in *Strickland* show that its adoption was "nothing more than a restatement" of existing law.[43] So, pre-and post-*Lafler*, the performance prong's demand that counsel's representation be evaluated by objective-standards of competence remains unmodified at the federal level.

---

[42] *Lafler*, 566 U.S. at 174.

[43] *Hall*, 474 U.S. at 58.

In West Virginia courts, the standard for attorney competence in evaluating allegations of ineffective assistance of counsel is found in *Miller*'s syllabus:

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. [44]

This Court has applied *Miller*'s objective standard of reasonably competent representation to evaluate the effectiveness of counsel in the plea context since its issuance in 1995. And, prior to *Miller*, this Court was applying *Thomas*, its like-minded predecessor:

> In the determination of a claim that the accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error. [45]

---

[44] Syl. Pt. 6, *Miller*.

[45] Syl. Pt. 19, *Thomas*, 157 W. Va. 640, 203 S.E.2d 445. In *Bordenkircher*, decided after *Strickland* in 1986, this Court tracked West Virginia's departure from the oft-criticized "farce and mockery" test to the adoption of the "more sophisticated" standard in *Thomas* in 1974. *Bordenkircher*, 176 W. Va. at 168-69, 342 S.E.2d at 133-34. *See also Trapnell v. U.S.*, 725 F.2d 149, 151-52 (2d Cir. 1983) (collecting cases demonstrating federal and state departures from "farce and mockery" test). *Bordenkircher* recognized *Strickland*'s significance and applied *Thomas* as articulating an analogous standard despite that

17

So, the contention that the performance prong has undergone a legally-significant change by operation of *Lafler* is untenable, and Mr. Miller's claim rises and falls on that prong.

Dispositive for our purposes in analyzing Mr. Miller's claim is the recognition that neither the 1995 habeas court nor the 2002 habeas court denied his claim because he had no Sixth Amendment or Section 14, Article III right to effective assistance of counsel at the plea-bargaining stage.[46] Likewise, neither court denied him relief by finding that any objectively-deficient advice he received from trial counsel relative to that plea was cured by a fair trial, free of constitutional error. Both conducted a *Strickland*-style analysis and concluded that counsel's advice was *not objectively-deficient*, with the 2002 court explicitly applying *Miller* to its findings.[47] That standard has not meaningfully changed in West Virginia since 1974 or at the federal level since *McMann v. Richardson* in 1970.

The 1995 habeas order incorporated by reference its finding that "there is no indication that his trial counsel did anything except what an experienced trial counsel

---

*Strickland* would not be incorporated into syllabus point by name until *Miller* in 1995. 176 W. Va. at 168-69, 342 S.E.2d at 133-34.

[46] As discussed above, such a finding would have been inconsistent with then-existing state law.

[47] *Miller* was issued several months after the 1995 order, but this Court recognized that adoption of *Strickland* by direct reference through syllabus point was a formality: "[o]ur recent cases have made it clear that we have accepted *Strickland* as part of our constitutional jurisprudence." *Miller*, 194 W. Va. at 15, 459 S.E.2d at 126. *See supra* n.45.

would do in a criminal case or failed to do what he should have done by a like standard." Similarly, the 2002 habeas court found that trial counsel informed Mr. Miller of the offer, discussed the plea information and possible consequences for the plea versus a trial verdict and that "Mr. Miller himself admitted that his trial counsel followed the steps needed to give his client an informed opinion and allowed the client to make the decision." It found that there was no evidence that any other criminal defense counsel would not have acted in the same manner and applied Syllabus Point 6 of *Miller*,[48] which speaks *only* to the performance prong, denying him relief on that basis alone.[49] Succinctly stated, Mr. Miller's claim failed the performance prong of *Strickland/Miller* and analysis of that prong takes place *outside* of any conceivable changes *Lafler* may have wrought.

Indeed, in examining a case with similar facts, this Court was presented with an invitation to "fully discuss the application of *Lafler*."[50] We declined, finding that *Lafler* was distinguishable because the State did not concede the deficiency of counsel and dubbed it the "inverse of *Lafler*" because the determinative issue was the performance prong of *Strickland/Miller*, not the prejudice prong.[51] Shortly thereafter in *William S. v. Ballard*, this

---

[48] *See supra* n.44.

[49] *See supra* n.25.

[50] *Plumley v. Dodson*, No. 14-1202, 2016 WL 1412247 at *4 n.6 (memorandum decision) (April 7, 2016). *See also Raines v. Ballard*, 236 W. Va. 588, 597 n.12, 782 S.E.2d 775, 784 n.12 (distinguishing *Lafler* because, there, counsel's advice was undisputedly deficient).

[51] *Plumley*, at *4 n.6.

19

Court was directly presented with an argument akin to the one posed here.[52] Specifically, the habeas applicant in that case claimed ineffective assistance of habeas counsel in failing to raise the ineffectiveness of trial counsel in advising him not to take a plea.[53] At the time of his prior habeas proceeding, he argued, West Virginia law would have extended the right to effective counsel to the plea negotiation process, so habeas counsel should have been aware of the availability of that grounds for relief.[54] To circumvent the application of res judicata given his prior habeas proceedings against both trial and habeas counsel, the claimant prayed for an exception under *Losh* that *Lafler* represented a change in the law favorable to him.[55] We found that res judicata *did* bar his claim, noting that *Lafler* was distinguishable because trial counsel communicated the plea offer and advised him to seriously consider it.[56] In other words, his claim failed the performance prong that was not modified in *Lafler*, so it could not be morphed into a "change in the law" sufficient to evade application of res judicata.

---

[52] No. 15-1175, 2016 WL 5348348 at *2 (memorandum decision) (September 23, 2016).

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.* at *3. The Court also distinguished *Missouri v. Frye*, 566 U.S. 134 (2012), the companion case to *Lafler*, issued the same day, and *Becton*, *supra* n.40, where this Court found trial counsel was objectively-deficient in failing to relay a plea offer.

Finding ourselves in the same "inverse-*Lafler*" circumstance, we again find that *Lafler* is distinguishable and neither required nor permitted the circuit court to revisit prior conclusions that Mr. Miller's claim failed the performance prong of *Strickland/Miller*. Because res judicata operated to preclude further claims of ineffective assistance of trial counsel after those claims were fully and finally adjudicated in the 1995 action, the circuit court erred in granting Mr. Miller's request for habeas relief.

## IV.    CONCLUSION

For the reasons set forth above, we reverse the August 31, 2022 order of the Circuit Court of Raleigh County.

Reversed.